**FAYETTE COUNTY BOARD OF COMMISSIONERS,**
Appellant,

v.

**AMERICAN FEDERATION OF STATE, COUNTY AND MUNICIPAL EMPLOYEES, COUNCIL 84.**

Commonwealth Court of Pennsylvania.

Argued Nov. 20, 1996.
Decided April 2, 1997.

Alex E. Echard, Mt. Pleasant, for appellant.

Alaine S. Williams, Philadelphia, for appellee.

Before COLINS, President Judge, and McGINLEY, SMITH, PELLEGRINI, KELLEY, FLAHERTY and LEADBETTER, JJ.

SMITH, Judge.

The Fayette County Board of Commissioners (Commissioners) appeals from an order of the Court of Common Pleas of Fayette County (trial court) that confirmed the award of an arbitrator determining that the discharge of a county corrections officer by the Fayette County Prison Board (Prison Board) was a matter subject to arbitration and that, although Fayette County (County) had just cause to discipline the officer, the penalty of discharge was excessive. The sole question presented is whether the grievance arbitration award must be vacated for lack of jurisdiction and/or arbitrability because the underlying discharge was an exercise of the Prison Board's inalienable statutory powers.

**I**

The Prison Board is made up of all three County Commissioners, a judge of the trial court, the Sheriff, the District Attorney and the County Controller, pursuant to Section 1 of the Act of May 16, 1921, P.L. 579, *as amended,* 61 P.S. § 408. The American Federation of State, County and Municipal Employees, Council 84 (AFSCME), is the certified collective bargaining representative for County corrections officers. The Commissioners are the exclusive representative for negotiating collective bargaining agreements and processing grievances for the Prison Board, as well as for judges and all other elected or appointed county officers having employment powers, pursuant to Section 1620 of The County Code, Act of August 9, 1955, P.L. 323, *as amended,* 16 P.S. § 1620. The Board of Commissioners and AFSCME entered into a collective bargaining agreement effective January 1, 1994.

The Prison Board voted to terminate Corrections Officer William Prinkey; AFSCME filed a grievance asserting a lack of just cause. Before the arbitrator, the County litigated the merits of the just cause issue and also challenged the arbitrability of the

termination, arguing that authority over discharges was reserved exclusively to the Prison Board under Section 4 of the Act of May 16, 1921, 61 P.S. § 411. Section 4 provides in part that "[a]ll deputies, assistants, or keepers ... may at any time be suspended by the warden or removed by the said board." The County further argued Prison Board exclusivity under Section 1620 of The County Code, which provides that the exercise of the commissioners' function as exclusive representative for other county officers "shall in no way affect the hiring, discharging and supervising rights and obligations with respect to such employes as may be vested in the judges or other county officers."

The arbitrator noted that the collective bargaining agreement expressly provides in Article XIV, Section I, that "[t]he County shall not discharge nor suspend any employee without just cause," and provides in Article XIV, Section 2, that "[a]n employee may grieve a discharge beginning with Step 3 of the grievance procedure." Arbitrator's Opinion and Award, p. 16. Article XXIV provides for arbitration as the fourth step of the grievance procedure. The arbitrator concluded that the parties intended to negotiate a just cause provision for discipline of employees and that they agreed to dispute resolution procedures including arbitration of discharges. He concluded further that such an agreement was consistent with statutory law and court precedent.

The Commissioners appealed, challenging only the determination as to arbitrability. The trial court, citing *Community College of Beaver County v. Community College of Beaver County, Soc'y of the Faculty (PSEA/NEA)*, 473 Pa. 576, 375 A.2d 1267 (1977), stated that judicial review of a public sector labor arbitration award is limited. The award must be confirmed by a reviewing court so long as the arbitrator's decision can in any rational way be derived from the collective bargaining agreement, viewed in light of the language, context and any other indicia of the parties' intention. The trial court cited *Leechburg Area School Dist. v.*

*Dale*, 492 Pa. 515, 424 A.2d 1309 (1981), and *Scranton Fed'n of Teachers, Local 1147, AFT v. Scranton School Dist.*, 498 Pa. 58, 444 A.2d 1144 (1982), for the proposition that the review described in *Community College of Beaver County*, known as the "essence test," extends to an arbitrator's decision regarding arbitrability. Applying that test, the trial court concluded that the terms of the agreement encompassed the subject matter of the dispute and that the award arose from the essence of the agreement.[1]

## II

The threshold question is the nature of this Court's review, a point on which the parties differ sharply. The Commissioners quote from Section 7302 of the Uniform Arbitration Act, 42 Pa.C.S. § 7302:

**(d) Special application.—**

(1) Paragraph (2) shall be applicable where:

. . . .

(ii) A political subdivision submits a controversy with an employee or a representative of employees to arbitration.

. . . .

(2) Where this paragraph is applicable a court in reviewing an arbitration award pursuant to this subchapter shall, notwithstanding any other provision of this subchapter, modify or correct the award where the award is contrary to law and is such that had it been a verdict of a jury the court would have entered a different judgment or a judgment notwithstanding the verdict.

They refer also to Section 7314(a)(1), 42 Pa. C.S. § 7314(a)(1), which provides that a court shall vacate an award where "(iii) the arbitrators exceeded their powers...."

The Commissioners argue that the question of the arbitrability of the grievance dispute is not derived from the collective bargaining agreement but rather is derived from statutory and constitutional law. They contend that the review of issues of law, jurisdiction and arbitrability is the same as review of

1. Following an initial opinion issued by a panel of this Court on July 19, 1996, reversing the order of the trial court, AFSCME applied for and was granted reargument before the Court en banc.

a verdict *non obstante veredicto,* citing *County of Centre v. Musser,* 519 Pa. 380, 548 A.2d 1194 (1988). Without citation, the Commissioners assert that the "essence test" cannot apply to the threshold question of the legal enforceability of the collective bargaining agreement or the jurisdiction of the arbitrator.

The Commissioners note that Article XXV of the collective bargaining agreement states that the parties' intent is that the agreement comply with all statutes, regulations and judicial decisions and that, if it or any portion of it is determined by proper authority to be in conflict with them, the agreement shall automatically be adjusted to comply. Article XXVI states that if any terms are found invalid or declared unenforceable by federal or state statute or regulation or by a decision of a court, such determination shall not affect any other terms. The Commissioners contend that these provisions show that the parties contemplated that terms of the collective bargaining agreement could be superseded by legislative or judicial actions. They aver that where statutes governing removal of employees exist, the courts have not hesitated to hold that grievance arbitration awards are invalid and unenforceable, without regard to the collective bargaining agreement provisions or the facts of a particular case.[2]

The Commissioners acknowledge that the question of the arbitrability of a matter in dispute must first be tested by grievance arbitration, citing Section 903 of the Pennsylvania Employe Relations Act (PERA), Act of July 23, 1970, P.L. 563, *as amended,* 43 P.S. § 1101.903, and *Pennsylvania Labor Relations Board v. Greater Johnstown Area Vocational–Technical School,* 48 Pa.Cmwlth. 604, 410 A.2d 1290 (1980). Because that procedure has been followed in this case, the Commissioners assert, again without citation, that this Court should now review the merits of their challenge, which relate to various constitutional and statutory provisions.

The Court concludes that the Commissioners' attempt to alter the settled law in regard to review of public sector grievance arbitration awards must fail. In *Scranton Fed'n of Teachers,* 498 Pa. at 65, 444 A.2d at 1147, the court held: "It is clear that the broad judicial deference given arbitrators' decisions applies with equal force to determinations regarding the arbitrability of the subject matter of a grievance." In *County of Centre v. Musser* the Supreme Court held that this Court correctly concluded that "essence test" review as set forth in *Community College of Beaver County* applied to judicial review of an arbitration award relating to the dismissal of prison guards. The Court expressly noted that, although *Community College of Beaver County* interpreted and applied a provision of a superseded statute relating to arbitration, Section 7302(d)(2) of the Uniform Arbitration Act was substantially a reenactment of the earlier provision. Therefore "essence test" review remained applicable under Section 7302(d)(2).

■ In the present case, there can be no dispute that the arbitrator's conclusions concerning the arbitrability of a grievance over discharge of a corrections officer is rationally derived from the terms of the agreement and draws its essence from that agreement. Indeed, the Commissioners do not contend otherwise. In view of the exceedingly clear language of Article XIV, providing that an employee may grieve a discharge, and Article XXIV, providing for arbitration as the fourth step of the grievance procedure, a conclusion to the contrary would be suspect under essence test review. Accordingly, this Court must affirm the trial court's order confirming the arbitrator's award.

### III

■ The Court observes that an alternative basis exists on the face of this record for affirming the trial court's order. AFSCME raised before the arbitrator, the trial court and this Court the question of

---

**2.** Of the several cases referenced by the Commissioners in support of this assertion, only one, *Neshaminy Fed'n of Teachers v. Neshaminy School Dist.,* 501 Pa. 534, 462 A.2d 629 (1983), involved review of an arbitrator's award following the grievance of a removal. The Supreme

Court applied "essence test" review and closely examined the terms of the collective bargaining agreement to conclude that the arbitrator's award reinstating the teacher did not draw its essence from the terms of the agreement and should be set aside.

whether the Commissioners should be estopped from advancing a claim that a provision of the collective bargaining agreement to which they voluntarily agreed should not be enforced because it is illegal. Neither the arbitrator nor the trial court addressed this issue, but AFSCME has preserved it for review.

In *Pittsburgh Joint Collective Bargaining Comm. v. City of Pittsburgh*, 481 Pa. 66, 391 A.2d 1318 (1978), the city refused to proceed to binding arbitration in a grievance over a discharge. The union filed a complaint in equity seeking to compel the city to submit to arbitration. The chancellor sustained the city's preliminary objections based upon an assertion that such arbitration was in conflict with provisions of the Civil Service Act, Act of August 5, 1941, P.L. 752, *as amended*, 71 P.S. §§ 741.1—741.1005, and that proceeding to arbitration was therefore prohibited by Section 703 of PERA, 43 P.S. § 1101.703. The Supreme Court held that the city could not assert that defense in that context to avoid compliance with the agreed upon arbitration procedure, and it expressly declined to address the question of whether the agreement was in conflict with the Civil Service Act. The Court stated:

> To permit an employer to enter into agreements and include terms such as grievance arbitration which raise the expectations of those concerned, and then to subsequently refuse to abide by those provisions on the basis of its lack of capacity would invite discord and distrust and create an atmosphere wherein a harmonious relationship would virtually be impossible to maintain.

*Pittsburgh Joint Collective Bargaining Comm.*, 481 Pa. at 74, 391 A.2d at 1322. *See also Grottenthaler v. Pennsylvania State Police*, 488 Pa. 19, 410 A.2d 806 (1980) (inclusion of retirement benefits in two collective bargaining agreements after the effective date of the state retirement statute constituted waiver of any bar to collection of such benefits under the exclusivity provision of the statute during the terms of those agreements).

In *City of Scranton v. Local Union No. 669 of the Int'l Ass'n of Fire Fighters, AFL–CIO*, 122 Pa.Cmwlth. 140, 551 A.2d 643 (1988), the city petitioned to set aside an award of arbitrators on the grounds of illegality of various provisions. Acknowledging that arbitrators may not mandate that a public employer perform an illegal act, this Court differentiated between new provisions of the award and those that were simply carried over from previous agreements into which the city had entered voluntarily. "The arbitrators' mandate, however, must be distinguished from a situation where an employer *voluntarily* agrees to perform an act. Where it does so it cannot later contend that the act is illegal and refuse to perform it; indeed, it will be estopped from doing so." *City of Scranton*, 551 A.2d at 646 (citing *Grottenthaler*; *Fraternal Order of Police, E.B. Jermyn Lodge # 2, by Tolan v. Hickey*, 499 Pa. 194, 452 A.2d 1005 (1982) (plurality opinion)). The Court noted that a public employer who came to believe that a term of its collective bargaining agreement was illegal could not raise illegality as a defense to an award or to the existing agreement but could bargain to have that provision removed from future agreements.

In the present case the Commissioners' sole claim before the trial court and this Court was and is that provisions of the collective bargaining agreement to which they voluntarily agreed are illegal. Under the authorities noted above, the Commissioners are estopped from advancing such a claim. Therefore, the order of the trial court confirming the arbitrator's award must be affirmed on this basis as well.[3]

### ORDER

AND NOW, this 2nd day of April, 1997, the order of the Court of Common Pleas of Fayette County is affirmed.

FLAHERTY, Judge, concurring and dissenting.

I respectfully concur and dissent. Although I agree with the majority that the

---

3. In view of the reasons stated for the disposition, the Court may not and does not express an opinion on the question of whether the just cause and arbitration provisions of the collective bargaining agreement conflict with statutes relating to counties and penal institutions, although this issue was argued by several amici curiae as well as by the parties.

grievance in the instant case was arbitrable, the majority did not go beyond that threshold. I feel that they should have reviewed the basis of the arbitration award which exceeded the power of the arbitrator when it modified the disciplinary action imposed on Correctional Officer, William Prinkey (Prinkey), by reinstating him after discharge when just cause for some form of discipline was found by the arbitrator.

### Part I

The Fayette County Board of Commissioners (Commissioners) does not challenge the merits of the arbitrator's decision. Generally, issues not raised below are waived on appeal. Pa. R.A.P. 302(a). Also, a reviewing court may not raise issues that were not raised by either of the parties. *Dilliplaine v. Lehigh Valley Trust Co.,* 457 Pa. 255, 257, 322 A.2d 114, 116 (1974). However, questions of subject matter jurisdiction are never waived and should be raised by the court *sua sponte* to vindicate the integrity of judicial and quasi-judicial processes in the Commonwealth. *Delaware County v. City of Philadelphia,* 153 Pa.Cmwlth. 167, 620 A.2d 666 (1993).

When reviewing grievance arbitration awards issued pursuant to the Public Employe Relations Act (Act 195),[1] the standard of review is the "essence test." *County of Centre v. Musser,* 519 Pa. 380, 390–91, 548 A.2d 1194, 1199 (1988). Under the essence test, a reviewing court must reverse a manifestly unreasonable arbitration award. *Philadelphia Housing Authority v. Union of Security Officers # 1,* 500 Pa. 213, 216, 455 A.2d 625, 627 (1983). In *Lehigh County Community College Faculty Association v. Lehigh County Community College,* 653 A.2d 47 (Pa.Cmwlth.1990), we held that once the arbitrator found that the grievant committed the alleged conduct and that there was just cause for disciplinary action, he was without authority to modify the degree of discipline imposed by the public employer. *Id.* at 49.

In this regard, grievance arbitration proceedings are bifurcated proceedings. An arbitrator must first act as a fact finder to determine whether the grievant engaged in the alleged conduct. If the arbitrator finds that the grievant engaged in the alleged conduct, he must then determine whether the conduct constitutes just cause under the agreement, work rules, or state law. Once the arbitrator finds that there is just cause for some type of discipline, under *Philadelphia Housing Authority,* he is without authority to modify the award as he does not have subject matter jurisdiction over the remedy. However, if the arbitrator finds that the grievant did not engage in the alleged conduct or that his conduct does not rise to the level of just cause for disciplinary action, only then does the arbitrator have the jurisdiction to proceed to the remedy phase of the arbitration proceedings. In the case *sub judice,* there is a question as to whether the arbitrator was without subject matter jurisdiction to modify the Prison Board's discharge of Prinkey. Therefore, the court should have raised this issue *sua sponte* and addressed the merits of the arbitrator's remedy which modified the disciplinary action taken by the Fayette County Prison Board (Board).

### Part II

When reviewing the merits of the grievance arbitration award under the essence test, we must look to the nature of the grievant's conduct, the agreement, and the arbitrator's decision. In the instant case, the Fayette County Prison has a published list of Prison Rules of Conduct and Discipline. Chapter XXIV of these rules provides in relevant part the following:

Section 5:

The following violations are considered major infractions and may result in disciplinary action up to and including discharge:

No employee shall:

I. Commit any act unbecoming a correctional officer, including acts detrimental to good discipline or tending to bring discred-

---

**1.** Act of July 23, 1970, P.L. 563, *as amended,* 43 P.S. §§ 1101.101–1101.2301. This legislation is commonly known as "Act 195."

it on the Prison, its employees, or the county.

Section 6:

The following violations are extremely serious and cannot be tolerated. Such violations are cause for discharge.

No employee shall:

C. Willfully and knowingly make an untruthful statement of any kind in any verbal or written statement pertaining to his official duties as a county employee to or in the presence of any supervisor....

Under Section 5, stated above, Prinkey was discharged by the Board because "[o]n Sunday, September 18, 1994, at or about 9:15 P.M. [he] willfully and without justification unzipped [his] pants, took out [his] penis and urinated onto the floor of the control room." (Notice of Termination, dated September 28, 1994). Prinkey was also discharged for making false statements to the Warden, a direct violation of Section 6, stated above, which mandates discharge. Not only did Prinkey admit to this behavior during arbitration, but evidence of Prinkey's conduct was also corroborated by several other correctional officers who witnessed Prinkey urinating.

In *Philadelphia Housing Authority,* where a security officer was discharged for defrauding a tenant in one of the buildings under the control of the Philadelphia Housing Authority (Authority) and the arbitrator reinstated the officer, our Supreme Court held that a public employer has an absolute public duty to ensure the integrity of its security force by discharging an employee who has committed criminal conduct against the individuals who that employee is paid to protect. *Philadelphia Housing Authority,* 500 Pa. at 216, 455 A.2d at 627. Once the arbitrator found that the grievant committed the alleged conduct, he *"was without authority to overturn the Authority's discharge." Id.*

In *Liquor Control Board v. Independent State Stores Union,* 520 Pa. 266, 553 A.2d 948 (1989), our Supreme Court stated that the meaning of just cause does not have to be defined in the agreement itself. Published work rules or regulations, of which the discharged employee should have known, that list offenses which could result in disciplinary action against employees, will provide the

arbitrator with the meaning of just cause regardless of whether or not these rules are expressly incorporated by reference into the collective bargaining agreement. *Id.* at 270, 277 n. 3, 553 A.2d at 950, 953 n. 3. The *Independent State Stores* Court stated:

Once it is established that the record reflects that there was just cause for the action taken, the inquiry must close and the action of the agency must be accepted. Thus, if just cause for the action was present, any further effort on the part of the arbitrator to disturb the agency's action cannot be said to flow from the essence of the bargaining agreement nor can it in any rational way be derived from that agreement.

*Id.* at 273–74, 553 A.2d at 952. "It would also be 'manifestly unreasonable' to conclude that any agency of this Commonwealth ... intended to bargain away its responsibility to ensure the ... integrity of its operation." *Id.* at 276, 553 A.2d at 953. Even if a term expressly excluded conduct that would interfere with a public employer's duty to ensure the integrity of its operations, its validity would be questionable. *Id.*

Under the present state of the law, an arbitrator, as fact finder, must look to the agreement to discern the intent of the parties regarding the meaning of just cause. Absent a discernible expression in the agreement, the arbitrator must look beyond the agreement to work rules or regulations for the meaning of just cause. Additionally, *Philadelphia Housing Authority* and its progeny imply a narrow definition of conduct constituting just cause for discharge in every public employer collective bargaining agreement under Act 195. In this regard, Prinkey's conduct in the instant case constituted just cause for discipline, including dismissal, for two reasons, and the arbitrator was without jurisdiction to award a modification of the disciplinary action of discharge imposed by the Board.

First, the Prison Rules of Conduct and Discipline defined the basis for just cause for discharging and otherwise disciplining employees within the meaning of *Independent State Stores.* Prinkey's conduct of publicly

exposing his genitalia and urinating in the control room, which was adjacent to the kitchen, and his conduct of lying to the Warden was in direct contravention of the rules. The arbitrator expressly found that Prinkey engaged in the alleged conduct. Therefore, with a clear expression of just cause for discharge that included Prinkey's conduct, the arbitrator went beyond his authority and ignored the intent of the parties by modifying the discharge.

Secondly, Prinkey's conduct fits within the narrow definition of just cause implied by law in every Act 195 agreement. The Board has a statutory and institutional duty to serve and protect prison inmates. Section 1 of the Act of May 16, 1921, P.L. 579, *as amended,* 61 P.S. § 408, provides that the "safe-keeping, discipline, and employment of prisoners, and the government management of said institution, shall be exclusively vested" in the prison board. Aside from arguably being a violation of the Crimes Code,[2] Prinkey's act of exposing his penis and urinating near the kitchen facilities presented a serious health risk to the inmates. The health of the inmates is within the Board's statutory responsibility to provide for the health and safekeeping of prison inmates. In this regard, the Board had just cause to discharge Prinkey for jeopardizing the health of the inmates and the integrity of its operations.

The arbitrator specifically stated in his award that "the County had just cause to discipline the grievant, but the discharge penalty was too severe under the circumstances of this case." Once the arbitrator found just cause *for discipline* in the instant matter, the inquiry should have closed, and the action of the Board should have been accepted. *Independent State Stores,* 520 Pa. at 278, 553 A.2d at 954. Based on the foregoing reasons, the majority should have reviewed the merits of the arbitration award in the instant case and concluded that the arbitrator's modification of the Board's discharge of Prinkey to a 60–day suspension was manifestly unreasonable.

## Part III

I also disagree with the categorical language in Part III of the majority opinion. The majority correctly recognized that our Supreme Court, in *Pittsburgh Joint Collective Bargaining Committee v. City of Pittsburgh,* 481 Pa. 66, 391 A.2d 1318 (1978), stated the following:

> To permit an employer to enter into agreements and include terms such as grievance arbitration which raise the expectations of those concerned, and then to subsequently refuse to abide by those provisions on the basis of its lack of capacity would invite discord and distrust and create an atmosphere wherein a harmonious relationship would virtually be impossible to maintain.

*Id.* at 74, 391 A.2d at 1322. Therefore, any claimed lack of capacity to agree to an illegal term must be addressed at the bargaining table before a dispute arises under the agreement. *Id.* at 75, 391 A.2d at 1322–23. Relying on this rationale, the majority holds that the Commissioners are categorically estopped from claiming that the arbitration provisions in the collective bargaining agreement are illegal and not binding, whether or not such provisions are actually illegal.

As previously explained in Part II of this dissenting opinion, our Supreme Court, however, has also held that, in the context of interpreting just cause for discharge in grievance arbitration proceedings under Act 195, a public employer cannot be deemed to have bargained away its managerial prerogative to ensure the integrity of its operations. *Independent State Stores,* 520 Pa. at 277, 553 A.2d at 953. In *Independent State Stores,* our Supreme Court stated that "a governmental agency does not have the freedom of a private enterprise to relinquish powers inherently essential to the proper discharge of its function." *Id.* at 277–78, 553 A.2d at 954. Therefore, a public employer will always have and cannot bargain away its right to discharge employees for conduct that threatens the integrity of the public employer's statutory duty, which will vary depending upon the nature of the public employer's operation. If a public employer cannot bargain away its authority to discharge employ-

**2.** Section 5901 of the Act of December 6, 1972, P.L. 1482, 18 Pa.C.S. § 5901.

ees for certain conduct, neither can the statutorily authorized collective bargaining agent.

The legislative enactment of Act 195 in 1970 imposed a duty on public employers to bargain with public employees.[3] Section 601 of Act 195 provides that "public employers may select representatives to act in their interest in any collective bargaining with representatives of public employes." 43 P.S. § 1101.601. The Legislature amended Section 1620 of The County Code[4] (Act 115) in 1976 to provide that county commissioners would be the exclusive bargaining representative of management in collective bargaining with public employees in counties of the third through eight classes. 16 P.S. § 1620. The amended version of Section 1620 of Act 115 provides, in relevant part, the following:

> [W]ith respect to ... collective bargaining negotiations involving any or all employes paid from the county treasury, the board of county commissioners shall have the sole power and responsibility to represent judges of the court of common pleas, the county and all elected or appointed county officers having any employment powers over the affected employes. *The exercise of such responsibilities by the county commissioners shall in no way affect the hiring, discharging and supervising rights and obligations with respect to such employes as may be vested in the judges or other county officers.*

*Id.* (emphasis added). The emphasized language of Section 1620 of Act 115, therefore, preserves the established statutory structure of authority, as stated in 61 P.S. § 411, by ensuring that certain matters of inherent managerial policy, such as hiring and discharging employees, are not altered by county commissioners at the collective bargaining table.

Section 4 of the Act of May 16, 1921, 61 P.S. § 411, provides that "[a]ll deputies, assistants, or keepers ... may at any time be suspended by the warden or removed by the

[board of inspectors]." Article XIV, Section 1, of the collective bargaining agreement (agreement) provides that "[t]he County shall not discharge nor suspend any employee without just cause." Section 2 of the same Article further provides that "[a]n employe may grieve a discharge beginning with Step 3 of the grievance procedure."

In other words, Section 1620 of Act 115 preserves in whom the authority to discharge county employees is vested. The "just cause" and arbitration provisions of the agreement do not, in themselves, affect the managerial prerogative to hire or discharge employees, rather they require a threshold level of misconduct by the employee before management can exercise that power.

In *Ellenbogen v. County of Allegheny,* 479 Pa. 429, 388 A.2d 730 (1978), judges of the Court of Common Pleas of Allegheny County sought a declaratory judgment to identify their managerial representative for collective bargaining with court employees. In *Ellenbogen,* our Supreme Court stated the following with regards to the amendment of Section 1620:

> The amendment governing representation of managerial interests promotes several important public interests, including fiscal responsibilities. County commissioners are charged with the responsibility of raising revenue and allocating funds among various county services. Thus, the amendment allows county commissioners to make managerial decisions affecting tax dollars. This reflects the legislative judgment that the officials charged with providing revenue for budgets are best able to assess whether employee proposals at the bargaining table are feasible and consistent with the overall administration of county fiscal and governmental affairs.

*Id.* at 436, 388 A.2d at 734 (citations omitted). The Supreme Court further reasoned that "[t]he Legislature's designation of county commissioners as managerial representative

---

**3.** Section 701 of Act 195, 43 P.S. § 1101.701. This section provides, in relevant part, that "[c]ollective bargaining is the performance of the mutual obligation of the public employer and the representative of the public employes to meet at reasonable times and confer in good faith with

respect to wages, hours and other terms and conditions of employment." *Id.*

**4.** Act of August 9, 1955, P.L. 323, *as amended,* 16 P.S. § 1620. This legislation is commonly known as "Act 115."

also avoids the potential difficulties of having too many decision-makers, none with the full authority to reach an agreement." *Id.* The *Ellenbogen* Court held that "Allegheny County Commissioners are the exclusive representatives of management in representation proceedings and collective bargaining under Act 195 involving court employees paid from county funds. This exclusive authority, however, does not diminish the right of judges to 'hire, discharge, and supervise' these employees." *Id.* at 438, 388 A.2d at 735. In upholding the constitutionality of Section 1620 of Act 115 and the managerial independence of judges who are a separate public entity of elected officials, the *Ellenbogen* Court stated that the amendment to Section 1620 of Act 115 does not infringe upon the constitutionally mandated independence of the judiciary. It follows, therefore, that Act 115 must be read into Act 195 and authorizes county commissioners to act as the negotiating agent for the other independent governing offices of the county in collective bargaining, but county commissioners cannot interfere with the supervisory authority of another governing body. *Lycoming County Prison Board v. Department of Labor and Industry,* 45 Pa. Cmwlth. 307, 405 A.2d 985, 988 (1979).

*Ellenbogen* makes clear that county commissioners are the statutorily authorized agents for public employers whose employees are paid from the county treasury. However, it also makes clear that the commissioners cannot bind their independent county principals to any terms that affect certain inherent managerial powers, e.g. to hire, promote, demote, or discharge employees. We have stated that "Act 115, by its very terms, recognizes that judges and other county offices retain" the supervisory powers of hiring and discharging employees. *Pennsylvania Labor Relations Board v. Della Vecchia,* 90 Pa.Cmwlth. 235, 494 A.2d 1151 (1985), *reversed on other grounds,* 517 Pa. 349, 537 A.2d 805 (1988). We further stated that "[t]he effect of Act 115 therefore was not to change employer status, but rather to designate a managerial representative for purposes of bargaining." *Id.*

In the case *sub judice,* the Commissioners must be recognized to be bargaining in two different roles. First, they are acting as principals in negotiations for the County departments under their statutory control, e.g., planning, probation, etc. Secondly, as a result of Section 1620 of Act 115, *supra,* they are appointed by statute as agents with limited authority to negotiate for the branches of County government independent of their control, such as judges, Board of Prison Inspectors, Sheriff, etc. The fact that there are three County Commissioners on the Prison Board does not enhance or expand the limitations placed upon their negotiating powers because, even collectively, they are in a minority position on the Board which consists of five other independent constitutional officers who usually are not permitted an opportunity to vote or ratify the terms negotiated by the Commissioners. While the Commissioners could bargain for terms and conditions of employment, including salaries, they could not agree with union representatives to bargain away the ability of the Board or the Warden to discharge employees for conduct that interferes with the integrity of prison operations because Section 1620 of Act 115 prohibits the Commissioners from disturbing that managerial function of the independent constitutional offices in collective bargaining. Further, our Supreme Court has held that the managerial prerogative to discharge employees for such conduct is outside the collective bargaining process. *Independent State Stores,* 520 Pa. at 275–78, 553 A.2d at 953–54.

In light of our Supreme Court's mandate that a public employer cannot restrict its supervisory power and ability to discharge an employee for conduct that threatens the integrity of its statutorily prescribed operations, I disagree with the majority when it dismisses the significance of whether the "just cause" provision and the arbitration procedures in the agreement are inconsistent with the Section 1620 of Act 115 and 61 P.S. § 411. In the instant case, the fact that the agreement is consistent with Section 1620 of Act 115 is extremely relevant because that section preserves the managerial authority to discharge employees established in 61 P.S. § 411, which cannot be bargained away.

In the instant case, if the arbitration terms in the agreement were inconsistent with 61

P.S. § 411 and Section 1620 of Act 115, i.e., vesting authority to discharge in persons other than the Board, the Commissioners would have attempted to bargain away the inherent managerial authority that is necessary to protect the integrity of the public employer's operations from wayward employees who threaten those operations, which our Supreme Court has forbidden. The result reached by the majority in Part III of its opinion is wrong when it holds that the legality of a term included in a labor agreement is always irrelevant provided that the parties voluntarily bargained for the term. Under the *Ellenbogen* line of cases, our Supreme Court has clearly held that managerial prerogatives of hiring and discharging employees is not a subject of collective bargaining and county commissioners cannot bargain for terms that interfere with those supervisory powers of the other independent governing bodies of the counties.

Under the *Philadelphia Housing Authority* line of cases, our Supreme Court has held that, in agreeing to a term requiring just cause for discharging an employee, a public employer may not bargain away its inherent managerial authority to discharge employees for conduct that threatens the integrity of its operations. In this manner, county commissioners cannot bind their independent county principals to a collective bargaining term, which expressly excludes from the meaning of just cause, behavior that threatens the integrity of the governing bodies' operations. Such a term would be akin to the county commissioners bargaining for a term that wholly places the authority to hire and discharge employees in officials other than those elected officials who constitute the county office in which the statutory authority to do so is exclusively vested.

Therefore, I must disagree with the majority to the extent that its reasoning would automatically bind the governing bodies of the county, which are independent of the county commissioners, to negotiated and illegal terms which effectively result in the bargaining away of certain inherent managerial prerogatives, e.g. hiring and discharging employees. Such a rule of law defies our Supreme Court and would eviscerate the ability of the county offices independent of the commissioners to protect the integrity of their operations and discharge their statutory duties.

LEADBETTER, J., joins in this concurring and dissenting opinion.