IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Allegheny County Prison Employees :
Independent Union (ACPEIU), :
      Appellant :
        :
        :
   v.    : No. 637 C.D. 2021
       : Argued: February 6, 2024
        :
Allegheny County, Pennsylvania :
(County Jail)     :


BEFORE: HONORABLE PATRICIA A. McCULLOUGH, Judge
    HONORABLE ELLEN CEISLER, Judge
    HONORABLE STACY WALLACE, Judge


OPINION
BY JUDGE WALLACE       FILED: April 3, 2024


   Allegheny County Prison Employees Independent Union (the Union) appeals from the June 2, 2021 order (Order) of the Court of Common Pleas of Allegheny County (Common Pleas) which denied the Union's Petition to Vacate (Petition to Vacate) an Act 195 Grievance Arbitrator's Supplemental Remedy Award (Remedy Award) issued by Arbitrator Vincent C. Longo, Esquire (Arbitrator). At issue is the Union's dispute with Allegheny County, Pennsylvania (Employer) over whether Allegheny County Jail (the jail) Corrections Officer David Foriska (Grievant) was entitled to lost wages during the period of time he was off work after Employer improperly terminated his employment, where Grievant failed to seek comparable alternative employment. After review, we affirm.

## BACKGROUND

The facts, as found by Arbitrator, are as follows and are not in dispute.[1] Grievant is a corrections officer at the jail. Reproduced Record (R.R.) at 158a. The Union is the collective bargaining representative of the corrections officers at the jail. *Id.* at 157a-58a. In an Arbitration Award dated September 13, 2018 (Arbitration Award), Arbitrator addressed Employer's suspension and discharge of Grievant for allegedly violating the jail's Use of Force Policy and Code of Ethics. *Id.* at 158a. Arbitrator concluded Employer discharged Grievant from his position without just cause in violation of the parties' collective bargaining agreement (CBA), and converted Grievant's discharge to an unpaid 30-day suspension. *Id.* Arbitrator directed Grievant "shall be made whole for any and all losses, including lost overtime opportunities" and Employer was "entitled to a set off for all reasonable interim earnings and unemployment compensation." *Id.* at 158a, 166a. Arbitrator retained jurisdiction to ensure compliance with the Arbitration Award. *Id.*

On September 16, 2018, Employer reinstated Grievant to his former position, but did not pay Grievant any amount of back pay. *Id.* On October 12, 2018, Employer appealed the Arbitration Award to Common Pleas by filing a Petition to Vacate Award (Petition to Vacate Arbitration Award). *Id.* On December 4, 2018, Common Pleas denied Employer's Petition to Vacate Arbitration Award. *Id.* Employer appealed to this Court. *Id.* at 159a. On November 7, 2019, this Court

---

[1] It is well established that an "arbitrator is authorized to make findings of fact to inform his interpretation of the [collective bargaining agreement]." *Millcreek Twp. Sch. Dist. v. Millcreek Twp. Educ. Support Pers. Ass'n*, 210 A.3d 993, 1006 (Pa. 2019). "An arbitrator's findings of fact are not reviewable on appeal, and as long as he has arguably construed or applied the collective bargaining agreement, an appellate court may not second-guess his findings of fact or interpretation." *Coatesville Area Sch. Dist. v. Coatesville Area Teachers' Ass'n/Pa. State Educ. Ass'n*, 978 A.2d 413, 415 n.2 (Pa. Cmwlth. 2009).

denied Employer's appeal. *Id.* Also on November 7, 2019, the Union demanded Employer pay Grievant back pay. *Id.*

On January 10, 2020, the Union requested a hearing before Arbitrator for the purpose of enforcing the Arbitration Award and determining the amount of back pay due to Grievant. *Id.* On August 28, 2020, Arbitrator held a remedy hearing. *Id.* At the remedy hearing, Grievant testified that before his termination, his wife stayed home with their children as the primary caregiver. *Id.* at 160a. However, after Employer terminated his employment, Grievant and his wife "switched roles," and he chose to stay at home to care for their children, one of whom has special needs and requires significant attention, while his wife obtained employment outside the home. *Id.* Grievant testified that following his suspension and discharge in October 2017, he drove for Uber for a short period of time and earned a total of approximately $600. *Id.* This job ended when he began having issues with his vehicle. *Id.* Grievant testified there are other jails and prisons near where he lived, but he did not apply to work at any of them and did not make any other attempt to secure employment. *Id.*

### Arbitrator's Remedy Award

On October 7, 2020, Arbitrator issued his Remedy Award in favor of Employer, concluding Employer was not required to provide any back pay to Grievant. *Id.* at 171a. Relying on *Philips Respironics v. Workers' Compensation Appeal Board (Mika)*, 232 A.3d 1019 (Pa. Cmwlth. 2020), Arbitrator explained that case presented similar facts to those of Grievant's as the claimant in that case elected to stay home with his children while his wife returned to work due to his family's financial considerations. Ultimately, in *Philips Respironics*, this Court determined that "[b]ecause [the claimant] acknowledged that there was work he could do, but he chose not to pursue it due to personal financial considerations, [the employer]

3

was not required to present evidence of available work within [the claimant's] restrictions or expert testimony regarding [the claimant's] earning power." *Id.* at 1024. Finding this determination persuasive, Arbitrator explained:

> It is well-established in labor arbitration that employees who are discharged or suspended without just cause have a duty to mitigate their losses if they wish to receive back pay upon their return to the job from which they were discharged. This duty to mitigate does not require the employee to apply for any available position. It requires that the employee seek positions with similar duties, wages, hours, and location. The employee is held to a due diligence standard. He or she need not succeed in securing alternative employment. Rather, he or she must make a bona fide attempt to mitigate their losses by seeking alternative employment.
>
> . . . .
>
> [Grievant], however, did not apply for any jobs (with the exception of a brief time driving for Uber). Instead, [Grievant] elected to stay at home to care for his children while his wife, who had been the primary caregiver, returned to work full time. [Grievant] made a financial decision that made sense for his family.
>
> . . . .
>
> [Grievant] testified at hearing that there are other jails and prisons in the area to which he could have applied but did not. [Grievant] may have faced some hurdles in securing alternative employment at another jail or prison, given that he had just been discharged from [the jail]. However, it cannot be assumed or known with certainty that no jail or prison would have hired him if he had applied. [Grievant] was required to use "due diligence" in seeking alternative employment. [Grievant] made no attempt to seek alternative employment. He thus did not satisfy his due diligence obligation.
>
> . . . .
>
> [Arbitrator] does not disagree that [Grievant] probably made a reasonable decision to stay at home and care for the children in lieu of working a minimum wage job. [Arbitrator] also agrees that principles of Worker[s'] Compensation law are not identical to principles of labor

4

arbitration. The reasoning of *Philips Respironics* certainly cannot be disregarded in the instant case[.]

However, one need not resolve the question of how making a reasonable financial decision impacts [Grievant's] entitlement to back pay. As noted, it is well-established in labor arbitration that a discharged or suspended employee must exercise due diligence and make a bona fide effort to mitigate his or her losses by seeking similar alternative employment. It is undisputed that there are other jails and prisons in the western Pennsylvania area. These facilities employ Corrections Officers – the position [Grievant] held at the [jail] prior to his discharge. It is also undisputed that [Grievant] did not apply to or otherwise make any effort to secure employment at any of these facilities, much less exercise due diligence and make a bona fide effort.

[Grievant] did what he believed was best for [his] family. It was most likely reasonable for [Grievant] to stay home to care for his special needs child in lieu of working at a fast food restaurant for minimum wage. But this did not absolve [Grievant] of his clearly-established responsibility to mitigate his losses by exercising due diligence by making a bona fide effort to seek similar alternative employment.

R.R. at 168a-69a. Accordingly, Arbitrator concluded Employer was not required to provide any back pay to Grievant.

### Common Pleas' Decision

The Union filed its Petition to Vacate with Common Pleas. On June 2, 2021, Common Pleas denied the Union's Petition to Vacate and affirmed the Remedy Award. *Id*. at 299a-301a. In its Pennsylvania Rule of Appellate Procedure 1925(a), Pa. R.A.P. 1925(a), Opinion dated July 27, 2021 (1925(a) Op.), Common Pleas explained the Remedy Award in this case was rationally derived from the CBA because

the CBA includes the issue of discipline[;] therefore[,] it is within the jurisdiction of [Arbitrator] to modify the discipline imposed on [Grievant] by reducing the discipline from termination to a suspension without pay. Because discipline is covered by the CBA, and suspension without pay is a form of discipline, it logically flows that [Arbitrator]

5

in this case had the authority to determine the need for back pay and any 'setoffs' to which [Grievant] may be entitled.

1925(a) Op. at 3.

Further, Common Pleas concluded the Remedy Award did not violate public policy. Common Pleas explained the remedy imposed by Arbitrator reduced Grievant's termination to a suspension without pay and eliminated Employer's obligation to pay lost wages because Grievant failed to mitigate his damages. *Id*. at 5-6. Common Pleas rejected the Union's assertion that the Remedy Award implicated the public policy of parents' rights to make decisions regarding the care, custody, and control of their children, and the state's interest in protecting the best interests of children. *Id*. at 5. Common Pleas explained the Union was "unable to point to any law or case-law establishing that a parent's right to choose to be a stay-at-home parent because he believes it is in the best interest of his child relieves that parent of the duty to mitigate damages in a labor dispute." *Id*. In its Order, Common Pleas pointed out that the Union could not "enunciate a well-established public policy that parents of dependent children are exempt from the obligation to mitigate damages." Order, at 2. Additionally, Arbitrator did not force Grievant to accept a lower paying job instead of caring for his daughter. *Id.* Rather, the Remedy Award only required Grievant to have made a good-faith effort to find comparable employment. *Id*.

Similarly, Common Pleas rejected the Union's assertion that the Remedy Award violated public policy by incentivizing Employer's non-compliance with the Arbitration Award during the appeal by requiring Grievant to mitigate lost wages without any notice or demand made to Grievant to do so. 1925(a) Op. at 5. Common Pleas explained the Remedy Award did not relieve Employer of the enforceability of the Arbitration Award because Grievant was reinstated at work three days after

Arbitrator issued his Arbitration Award, and if Grievant had properly mitigated his damages, any amount due to him after the hearing on set-off would have been binding and enforceable. *Id.* at 6. Common Pleas pointed out that Arbitrator retained jurisdiction to ensure compliance with the Arbitration Award and "[c]ompliance include[d] [Grievant's] duty to mitigate damages." Order, at 2. Accordingly, Common Pleas concluded Arbitrator was within his authority to determine Grievant was not entitled to back pay. *Id.* at 3.

## Arguments on Appeal

The Union now appeals to this Court. On appeal, the Union asserts Common Pleas erred by holding the Remedy Award drew its essence from the CBA. The Union's Br. at 8. Additionally, the Union argues Common Pleas erred by finding the Remedy Award did not violate public policy (1) by denying Grievant "make-whole wages by forcing . . . Grievant to prioritize the mitigation of lost wages . . . over providing personal care for his special needs child" and (2) by "incentivizing [Employer's] non-compliance with [the Arbitration Award]." *Id.* at 8-9.

In response, Employer asserts the Remedy Award denying back pay was in accordance with the law and the CBA. Employer's Br. at 1, 5. Employer points out that in addition to the explicit retention of jurisdiction within the Arbitration Award, the Union acknowledged Arbitrator's retention of jurisdiction when it requested a hearing before Arbitrator to enforce the Arbitration Award and to determine any back pay due to Grievant. *Id.* at 5. Additionally, Employer contends both the Union's arguments that the Remedy Award violates public policy lack merit. *Id.* First, Employer asserts an employee's duty to mitigate damages has no effect upon parental rights and thus does not violate public policy. *Id.* Second, Employer argues the Remedy Award did not incentivize Employer's non-compliance with the

7

Arbitration Award because Arbitrator retained jurisdiction; therefore, Employer did not fail to comply with a final lawful award. *Id*. at 26.

## DISCUSSION

Our standard of review of labor arbitration awards under the Public Employe Relations Act (PERA)[2] is the "essence test." *Cent. Dauphin Sch. Dist. v. Cent. Dauphin Educ. Ass'n*, 767 A.2d 16, 18-19 (Pa. Cmwlth. 2001). Under the essence test, we must first determine if the issue is encompassed within the terms of the CBA. *Id*. If so, we will uphold an arbitrator's award provided the arbitrator's interpretation may be rationally derived from the CBA. *Id*. at 18-19. The Pennsylvania Supreme Court has explained that the essence test requires

> an arbitrator's interpretation be upheld if it can, in *any rational way*, be derived from the language and context of the agreement. When an issue, properly defined, is within the terms of a collective bargaining agreement and the arbitrator's decision can in a rational way be derived from the terms of the agreement, one can say that the decision draws its "essence" from the agreement, and reversal is not warranted even if a court believes that the decision, though rational, is incorrect.

*Delaware Cnty. v. Del. Cnty. Prison Emps. Indep. Union*, 713 A.2d 1135, 1137 (Pa. 1998) (emphasis in original and citation omitted). Further, the Court noted in *State System of Higher Education (Cheyney University) v. State College University Professional Association (PSEA-NEA)*, 743 A.2d 405, 413 (Pa. 1999), a court should "only vacate an arbitrator's award where the award indisputably and genuinely is without foundation in, or fails to logically flow from, the collective bargaining agreement." The essence test applies equally to our review of an arbitrator's threshold determinations of the legal enforceability of a CBA, as well as the

---

[2] Act of July 23, 1970, P.L. 563, *as amended*, 43 P.S. §§ 1101.101–1101.2301.

jurisdiction of the arbitrator. *Fayette Cnty. Bd. of Comm'rs v. Am. Fed'n of State, Cnty. & Mun. Emps., Council 84*, 692 A.2d 274 (Pa. Cmwlth. 1997).

**Essence Test**

First, we address the Union's assertion that Common Pleas erred by holding Arbitrator's Remedy Award was rationally derived from the CBA under the essence test. The Union's Br. at 26. The Union argues Arbitrator exceeded its jurisdiction by denying Grievant wages he was awarded under the Arbitration Award. *Id*. In response, Employer maintains Arbitrator's Remedy Award satisfies the essence test because Arbitrator retained jurisdiction to allow further modification of the remedy and the Union petitioned Arbitrator to review the discipline issued. Employer's Br. at 7. Employer asserts both parties acknowledged Arbitrator's jurisdiction to determine whether Grievant was entitled to back pay and if so, the amount, by placing those issues before Arbitrator. *Id*. Employer points out that arbitrators have the authority to modify discipline and "[i]nherent within the authority to modify discipline is the review of all relevant evidence to determine the need for and/or amounts of back pay." *Id*. at 9. We agree with Employer.

An arbitrator has jurisdiction to decide the arbitrability of an issue, and we give broad deference to the arbitrator's determinations regarding arbitrability of the subject matter of a grievance. *Wattsburg Area Sch. Dist. v. Wattsburg Educ. Ass'n, PSEA/NEA*, 884 A.2d 934, 937 (Pa. Cmwlth. 2005); *Scranton Fed'n of Tchrs., Loc. 1147, AFT v. Scranton Sch. Dist.*, 444 A.2d 1144, 1147 (Pa. 1982). This Court has previously held that reopening an arbitration under retained jurisdiction, in order to afford a remedy under the original award, is not only permissible, but fulfills the arbitration policy of PERA to provide inexpensive, expeditious contractual

9

remedies. *Greater Latrobe Area Sch. Dist. v. Pa. State Educ. Ass'n*, 615 A.2d 999, 1004-05 (Pa. Cmwlth. 1992).

Regarding remedies, it is well established that an arbitrator may fashion a remedy in a particular case that is not explicitly prescribed in the CBA so long as the remedy furthers the essence of the CBA. *Rose Tree Media Sec'y & Educ. Support Pers. Ass'n v. Rose Tree Media Sch. Dist.*, 136 A.3d 1069, 1080 (Pa. Cmwlth. 2016). An arbitrator has broad authority with respect to crafting an award, which requires the court give an arbitrator latitude and flexibility in doing so. *Pa. State Sys. of Higher Educ., Lock Haven Univ. v. Ass'n of Pa. State Coll. & Univ. Facs.*, 193 A.3d 486, 495-96 (Pa. Cmwlth. 2018); *Pa. Tpk. Comm'n v. Teamsters Loc. Union No. 250*, 639 A.2d 968, 974 (Pa. Cmwlth. 1994). However, this authority is not limitless. Where an award changes the language of a CBA or adds new or additional provisions to the agreement, it fails the essence test. *Cheyney Univ.*, 743 A.2d at 422. The United States Supreme Court explained the following:

> When an arbitrator is commissioned to interpret and apply the collective bargaining agreement, he is to bring his informed judgment to bear in order to reach a fair solution of a problem. This is especially true when it comes to formulating remedies. There the need is for flexibility in meeting a wide variety of situations. The draftsmen may never have thought of what specific remedy should be awarded to meet a particular contingency.

*United Steelworkers of Am. v. Enter. Wheel & Car Corp.*, 363 U.S. 593, 597 (1960). Specifically, regarding an award of back pay, this Court has held that where the CBA sets no limits on the remedial power of the arbitrator, an arbitrator's award of back pay to a grievant neither adds to, subtracts from, nor modifies the provisions of the agreement. *Slippery Rock Univ. of Pa., State Sys. of Higher Educ. v. Ass'n of Pa.*

*State Coll. & Univ. Fac.*, 241 A.3d 1278, 1288 (Pa. Cmwlth. 2020). Therefore, an award of back pay satisfies the essence test. *Id.*

Here, the issue before Arbitrator was whether Grievant was entitled to back pay and if so, what amount. Article XVIII of the parties' CBA covers suspension and discharge, and Article XXI of the CBA covers compensation (R.R. at 46a-47a, 51a-58a). Arbitrator previously modified Grievant's termination to a suspension in its Arbitration Award. The issue of whether Grievant was entitled to back pay based on that modification and, if so, the amount, logically flows from the CBA, and the first part of the essence test is satisfied.

Next, we determine whether Arbitrator's Remedy Award can be rationally derived from the CBA. We conclude that it can. First, the CBA between these parties did not preclude Arbitrator's retention of jurisdiction in this case. If resolution of this dispute between the parties required new grievance procedures and possible arbitration, this could have caused excessive delay and expense. Rather, Arbitrator avoided further delay of final resolution of the grievance by retaining jurisdiction. Second, Arbitrator's Remedy Award was rationally derived from the CBA because the CBA covers suspension and discharge, as well as compensation, which encompasses the issue of back pay. Arbitrator's Remedy Award determining Employer owed Grievant no back pay did not add to, subtract from, or modify the provisions of the CBA. *See Slippery Rock Univ. of Pa.*, 241 A.3d at 1288. Accordingly, the Remedy Award derives from the CBA and satisfies the essence test.

### Public Policy

Because the essence test is satisfied, we turn to the Union's assertion that the Remedy Award violates public policy. The Union sets forth two arguments in

11

support of its contention that the Remedy Award violates public policy. First, the Union asserts the Remedy Award "forc[ed] [Grievant] to prioritize the mitigation of lost wages during a period of dispute over his discharge, over providing personal care for his special needs child." The Union's Br. at 34. Second, the Union contends the Remedy Award "incentiviz[ed] [Employer's] non-compliance with [the Arbitration Award], by requiring [Grievant] to mitigate lost wages by applying for comparable employment during the period of Grievance Arbitration, employment that he would not, in fact, receive given the nature of the charges and discipline then in effect." *Id.* at 48.

Whether the public policy exception applies in a case is a question of law subject to our plenary, *de novo* review. *Phila. Hous. Auth. v. Am. Fed'n of State, Cnty. & Mun. Emps., Dist. Council 33, Loc. 934*, 52 A.3d 1117, 1121 (Pa. 2012). This means we review the entire record on appeal, and we do not defer to the lower court when reaching our decision. *Mercury Trucking, Inc. v. Pa. Pub. Util. Comm'n*, 55 A.3d 1056, 1082 (Pa. 2012) (citing *Heath v. Workers' Comp. Appeal Bd. (Pa. Bd. of Prob. & Parole)*, 860 A.2d 25, 29 n.2 (Pa. 2004)). The public policy exception requires the application of a three-prong test:

> First, a reviewing court must identify precisely what **remedy** the arbitrator imposed. *Westmoreland* [*Intermediate Unit #7 v. Westmoreland Intermediate Unit #7 Classroom Assistants Educ. Support Pers. Ass'n, PSEA/NEA*], 939 A.2d [855, 865-66 (Pa. 2007)] (urging that "a court should not enforce a grievance arbitration **award** that contravenes public policy"). Next, the court must inquire into whether that remedy implicates a public policy that is "well-defined, dominant, and ascertained by reference to the laws and legal precedents and not from general considerations of supposed public interests." *Id.* at 866. Finally, the reviewing court must determine if the arbitrator's

award compels the employer to violate the implicated policy, given the particular circumstances and the factual findings of the arbitrator.

*Millcreek*, 210 A.3d at 1011 (emphasis in original). While there must be "some reasonable, calibrated, defensible relationship between the conduct violating dominant public policy and the arbitrator's response," *Philadelphia Housing Authority*, 52 A.3d at 1128, ultimately, our "focus must be on whether the arbitration award, if enforced, would contravene public policy[.]" *Blairsville-Saltsburg Sch. Dist. v. Blairsville-Saltsburg Educ. Ass'n*, 102 A.3d 1049, 1052 (Pa. Cmwlth. 2014). Because the Union is the party asserting the public policy exception, it bears the burden of establishing such a violation. *Westmoreland*, 939 A.2d at 864.

*The Remedy*

Applying the three-prong test to this case, we conclude the Remedy Award does not violate public policy. Regarding the first prong, Arbitrator issued a remedy that relieved Employer of its responsibility to pay Grievant back pay where Grievant failed to make any attempt to seek similar alternative employment after his employment was terminated by Employer.

*Implication of Public Policy*

Next, we consider the second prong, whether the remedy implicates a well-defined public policy. First, regarding the Union's argument concerning parental rights, we agree with the Union that there is an important public policy in protecting "the fundamental right of parents to make decisions as to the care, custody, and control of their children." The Union's Br. at 36; *see J.C.D. v. A.L.R.*, 303 A.3d 425, 433 (Pa. 2023) (acknowledging that parents have a fundamental right to direct the care, custody, and control of their children). We disagree, however, that the existence of this public policy interest is in any way applicable to the issue of whether Grievant is entitled to back pay. Under this prong, the issue is not whether

13

a public policy exists, but rather whether the remedy *implicates* the public policy. Arbitrator determined Grievant was not entitled to back pay because he failed to seek similar alternative employment after Employer terminated his employment. This remedy in no way implicates a public policy regarding parental rights, and we reject the Union's argument to the contrary.

Similarly, the remedy does not implicate a public policy against incentivizing an employer's non-compliance with an arbitrator's award. The Union's argument rests entirely on its assertion that Employer failed to comply with the Arbitration Award by failing to pay Grievant back pay. However, while the Arbitration Award provided Grievant was to be "made whole for any and all losses," it also provided Employer was "entitled to a set off for all reasonable interim earnings and unemployment compensation." R.R. at 158a, 166a. Additionally, the Arbitration Award itself contained specific language indicating Arbitrator was retaining jurisdiction to ensure compliance with the Arbitration Award. *Id*. Therefore, the amount of back pay Employer owed Grievant was not set forth and the need for Arbitrator to determine that amount in the future was inherent within the Arbitration Award. In this case, Employer did not fail to comply with the Arbitration Award by waiting for Arbitrator to determine the amount of back pay owed before it paid Grievant. Because Grievant failed to mitigate his losses, Arbitrator found Employer owed Grievant no back pay. Thus, the remedy does not implicate a public policy incentivizing an employer's non-compliance with an arbitration award.

*Violation of Public Policy*

We turn to the third prong of the analysis, whether the Remedy Award compels Employer to violate public policy, given the circumstances of the case and factual findings of Arbitrator. *Millcreek*, 210 A.3d at 1011. An arbitrator's award

14

will be found to be in violation of a stated public policy where it makes a mockery of, or causes an employer to violate, an implicated public policy. *See Phila. Hous. Auth.*, 52 A.3d at 1125. The Remedy Award does neither. Instead, Arbitrator's Remedy Award awarding no back pay where Grievant failed to put forth any effort to find work after he was wrongfully discharged is consistent with the law. *See Pa. Lab. Rels. Bd. v. Sand's Rest. Corp.*, 240 A.2d 801, 806 (Pa. 1968) (holding that a "wrongfully discharged employee is bound to use reasonable efforts to find work and, if he does not do so, wages he could have earned are deducted from his back pay award"). Because the Remedy Award does not compel Employer to violate public policy, the third prong is satisfied.

## CONCLUSION

The Remedy Award derives its essence from the CBA. Additionally, the Union failed to prove the Remedy Award violates any well-defined public policy. Accordingly, we affirm Common Pleas' order denying the Union's Petition to Vacate.

 

 

 

                                       _____

                                       STACY WALLACE, Judge

IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Allegheny County Prison Employees   :
Independent Union (ACPEIU),      :
                   Appellant   :
                                :
          v.            :  No.  637 C.D. 2021
                                :
Allegheny County, Pennsylvania    :
(County Jail)                      :

# **O R D E R**

**AND NOW**, this 3rd day of April 2024, the Court of Common Pleas of Allegheny County's June 2, 2021 order is **AFFIRMED**.

_____
STACY WALLACE, Judge