**COATESVILLE AREA SCHOOL DISTRICT, Appellant**

v.

**COATESVILLE AREA TEACHERS' ASSOCIATION/PENNSYLVANIA STATE EDUCATION ASSOCIATION.**

Commonwealth Court of Pennsylvania.

Argued June 11, 2009.

Decided July 9, 2009.

James E. Ellison and Stephen Moniak, Harrisburg, for appellant.

Annemarie Dwyer, West Chester, for appellee.

BEFORE: PELLEGRINI, Judge, BUTLER, Judge, and FRIEDMAN, Senior Judge.

OPINION BY Judge PELLEGRINI.

Coatesville Area School District (School District) appeals an order of the Court of Common Pleas of Chester County (trial court) which denied the School District's petition to modify or vacate the interim grievance arbitration award holding that the School District was not allowed to unilaterally change contract provisions of an expired collective bargaining agreement to combine or eliminate extracurricular activities before the negotiation of a new collective bargaining agreement.

Under the terms of the 2000–2004 Collective Bargaining Agreement (CBA) between the School District and the Coatesville Area Teachers' Association (Association), teachers received pay for extra-duty work related to extracurricular activities based on years of experience. Extra duties included coaching athletic activities and sponsoring school clubs. Under the CBA, extra pay for extra duty was not automatic, and the extra pay required approval by the school board for the school year. Further, Article IV, paragraph H(3)(c) of the CBA stated:

The number of activities and clubs that exist at the end of the 1999–2000 school year will remain the same for the length of this Agreement. The School Board, upon recommendation of the District-Wide Liaison Committee, may approve new activity and club sponsorship(s).

After the 2000–2004 CBA expired, the School District eliminated or combined extra-duty positions involving extracurricular activities due to budget restraints. The Association filed two class action grievances contending that even though the CBA had expired and a successor contract was not in place, the School District could not unilaterally eliminate or combine extracurricular positions.

The School District denied the grievances maintaining that the Pennsylvania Public School Code vested the School District with the sole discretion to supervise and manage extracurricular activities and clubs, including the elimination and/or combination of extra-duty positions.[1] The School District also denied the grievances because the provision regarding extra-duty positions was only binding for the duration of the agreement and, because the CBA had expired and the subject was a non-mandatory bargaining topic, the School District was free to eliminate or combine positions. The matter was then submitted to arbitration.

In 2006, the grievances were consolidated and the following question was submitted to the arbitrator: "Whether it was a violation of the 2000–2004 CBA for the School District to eliminate, slash or combine certain extra-duty positions prior to the signing of the August 2004—August 2007 CBA." After the hearing, the arbitrator determined that the School District violated the CBA when it eliminated/combined extra-duty positions after the expiration of the 2000–2004 CBA and prior to the signing of the 2004–2007 CBA because he found the provision to be a mandatory subject of bargaining based on its impact on wages, hours and terms and conditions of employment.

The School District filed a petition to vacate or modify the award with the trial court in 2008. The trial court issued an order denying the School District's petition because it held that the School District was required to maintain the *status quo* in the absence of a new CBA, and that the extra-duty provisions were mandatory subjects of bargaining. The School District then appealed to this Court.[2]

1. Pennsylvania Public School Code (School Code), Act of March 10, 1949, P.L. 30, *as amended*, 24 P.S. §§ 1–101—27–2702. Under Sections 511(a)(1) and (2) of the School Code, 24 P.S. § 5–511(a)(1) and (2), a school district has the power to establish, manage, supervise and finance extracurricular activities, and under Sections 511(c)(2) and (3) of the School Code, 24 P.S. § 5–511(c)(2) and (3), a school board of directors may authorize any school employee or employees to manage, supervise and control the development of such activities, and employ or assign any school employee to serve in any capacity in connection with such activities.

2. When reviewing an arbitrator's interpretation of a collective bargaining agreement, the proper standard of review for an appellate court is the deferential essence test. An exceptionally deferential standard is applied because binding arbitration is a highly favored method of dispute resolution. The essence test is a two prong test under which an award

should be upheld if (1) the issue as properly defined is within the terms of the collective bargaining agreement and (2) the arbitrator's award can be rationally derived from the collective bargaining agreement. *State System of Higher Education (Cheyney University) v. State College University Professional Association*, 560 Pa. 135, 743 A.2d 405 (1999). An arbitrator's findings of fact are not reviewable on appeal, and as long as he has arguably construed or applied the collective bargaining agreement, an appellate court may not second-guess his findings of fact or interpretation. *See City of Philadelphia v. Fraternal Order of Police Lodge 5*, 717 A.2d 609 (Pa. Cmwlth.1998). A reviewing court may only vacate an award when it is indisputably without foundation or fails to logically flow from the agreement. Our Supreme Court recently reaffirmed the highly deferential essence test in *Westmoreland Intermediate Unit #7 v. Westmoreland Intermediate Unit #7 Classroom Assistants Educational Support Person-*

## I.

Citing to *Apollo–Ridge School District v. Apollo–Ridge Educational Association*, 799 A.2d 911 (Pa.Cmwlth.2002), the School District also maintains that the arbitrator does not have jurisdiction because provisions regarding extracurricular activities are not arbitrable because the CBA contains no specific term or provision addressing whether extra-duty positions may be eliminated or combined.

In *Apollo–Ridge*, the school district's (District) board of school directors (Board) annually selected persons to lead various extracurricular programs offered to the District's secondary students. In the past, the Board had always adopted the high school principal's recommendations when making extra-duty assignments, but for the school year in question, the Board failed to follow the principal's recommendations, instead filling those positions with two people who were not members of the bargaining unit. The union filed grievances contending that the Board's failure to reappoint two teachers to those units violated the collective bargaining agreement. The District denied that the assignment of extra-duty work was covered by the CBA and, therefore, contended that the grievances were not arbitrable. When the District and the Board were unable to resolve their differences, they submitted the grievances to arbitration. After a hearing, the arbitrator determined that the matter was arbitrable and sustained the Board's grievances and awarded back pay because the past practice had given rise to a local working condition protected by the CBA and, therefore, the Board was obligated to assign extra-duty work to those persons recommended by the high school principal. We reversed because it could not rationally be derived from the collective bargaining agreement that elected officials who were given the sole power and discretion in selecting persons to fill extra-duty positions had conceded that power to the high school principal just because the Board accepted the principal's recommendation in the past.

In this case, the 2000–2004 CBA which the arbitrator was interpreting specifically provided under Article IV, paragraph H that the "number of activities and clubs that exist at the end of the 1999–2000 school year will remain the same for the length of this Agreement." Unlike *Apollo–Ridge*, where the arbitrator found that a past practice took away from elected officials the power to appoint extra duty officials, the 2000–2004 CBA here plainly stated that "the number of activities and clubs that exist at the end of the 1999–2000 school year will remain the same for the length of this Agreement." We agree with the School District that the CBA does not contain any provisions dealing with the elimination or consolidation of extracurricular activities for the simple reason that they agreed that would not occur. Unlike *Apollo Ridge*, where the arbitrator took away from the school board the power to employ supervisors for extracurricular activities, here, the arbitrator was following the plain language of the CBA that was agreed to by the School District when he found that no positions could be eliminated.

## II.

Even if the matter was arbitrable, the School District contends that the arbitrator's decision that the 2000–2004 CBA provisions regarding extra-duty provisions remained in effect after the contract expired cannot be derived from the essence of the

*nel Association, PSEA/NEA*, 595 Pa. 648, 939 A.2d 855 (2007). In *Westmoreland*, the Supreme Court also adopted the federal public policy test as an exception to the essence test.

agreement because those provisions did not survive the CBA. While recognizing that the *status quo* must be maintained between the time one contract expires and another begins, the School District contends that the *status quo* doctrine does not apply to non-mandatory subjects of bargaining because they are matters of inherent managerial discretion.

### A.

Whether bargaining over the number of clubs and activities is a matter of inherent managerial policy is governed by Section 702 of the Public Employe Relations Act (PERA).[3] It provides that:

> Public employers shall not be required to bargain over matters of inherent managerial policy, which shall include but shall not be limited to such areas of discretion or policy as the functions and programs of the public employer, standards of services, its overall budget, utilization of technology, the organizational structure and selection and direction of personnel. Public employers, however, shall be required to meet and discuss on policy matters affecting wages, hours and terms and conditions of employment as well as the impact thereon upon request by public employe representatives.

Regarding extracurricular activities, Section 511 of the School Code, 24 P.S. § 5–511, vests a school district with the managerial discretion to employ and assign employees to supervise extra-duty positions. It provides that school districts have the discretion to "prescribe, adopt, and enforce . . . reasonable rules and regulations . . . regarding . . . the management, supervision, control or prohibition of exercises, athletics, or games of any kind, school publications, debating . . . and other activities relating to . . . the organization, management, supervision, control, financing or prohibition of organizations, clubs, societies and groups."

■ While that provision of the School Code is not needed to find that the number and type of extracurricular activities is an inherent management activity, it confirms that, just as with the number of subjects offered, a school district is free to create activities and clubs and is similarly free to eliminate them within its managerial discretion. *See also Teamsters Local 77 & 250 v. Pennsylvania Labor Relations Board,* 786 A.2d 299 (Pa.Cmwlth.2001) (elimination of a light-duty job program was not an unfair labor practice under PERA because the public employer had managerial discretion to create the light-duty program, and the public employer had discretion to eliminate the program.)

### B.

■ Even though a public employer is not statutorily required to negotiate regarding matters of inherent managerial rights, if it chooses to do so, absent contrary positive legislation, it is bound by the terms of a collective bargaining agreement. *Scranton School Board v. Scranton Federation of Teachers, Local 1147, A.F.T.,* 27 Pa.Cmwlth. 152, 365 A.2d 1339 (1976). The question then becomes whether the contract provisions involving inherent managerial policy can be changed once the contract in which those provisions are contained has expired.

■ Generally, a public employer must maintain the *status quo* of the expired contract until a new contract is negotiated. *Northwest Area School District. v. Northwest Area Educational Association,* 954 A.2d 111 (Pa.Cmwlth.2008). Not disputing that as a general rule, the contract provi-

---

3.  Act of July 23, 1970, P.L. 563, *as amended,*   43 P.S. § 1101.702.

sions remain in effect during the interim between collective bargaining agreements, citing to *Pennsylvania State Park Officers' Association v. Pennsylvania Labor Relations Board,* 854 A.2d 674 (Pa. Cmwlth.2004), the School District contends that because the number of extracurricular activities is an inherent managerial prerogative, it can change the *status quo* once the old contract expires.

In *Pennsylvania State Park Officers' Association,* we addressed what *status quo* had to be maintained until a new collective agreement was executed. We held that longevity payments due during a strike were not required to be paid because the contract had expired. In so finding, we relied on our Supreme Court's decision in *Fairview School District v. Unemployment Compensation Board of Review,* 499 Pa. 539, 454 A.2d 517 (1982), which addressed teacher eligibility for unemployment compensation benefits during a work stoppage. The union argued that the school district had changed the *status quo* because it failed to move personnel up a pay step under an expired contract. The school district argued that the stepped-up salary schedules in the expired contract applied to the specific years covered by the contract, and increases beyond those years were neither bargained for nor contemplated. The school district also argued that requiring step increases under the expired contract would undermine bargaining.

Our Supreme Court concluded that the district's failure to pay stepped-up salaries in the interim period did not constitute a disruption in the *status quo* and, therefore, the teachers were not entitled to unemployment compensation benefits. Although the Court found for the school district, in doing so it opined:

> The underlying rationale for the status quo requirement is that during the interim period between contracts, the employer may continue operations and the employee may continue working, while the parties are free to negotiate on an equal basis in good faith. Maintenance of the status quo is merely another way of stating that the parties must continue the existing relationship in effect at the expiration of the old contract. To require the School District to pay stepped up salary increases beyond the specified years contained in the expired contract changes the existing relationship in the context of the terms and conditions subject to the very negotiations sought to be fostered.

499 Pa. at 546–47, 454 A.2d at 521.

■ *Pennsylvania State Park Officers' Association* posits that there can be no change in the *status quo* during the interim between bargaining agreements. While the School District is free in the subsequent contract not to negotiate over extracurricular activities, it cannot change the *status quo* by unilaterally stripping from the contract bargained-for provisions. To hold otherwise would fail to advance our Supreme Court's mandate that during the interim period between contracts, maintenance of the *status quo* is necessary for good faith bargaining.

## III.

■■ The School District's final argument is that the award contravenes public policy under the narrow exception to the essence test. To fall within the public policy exception, the School District must establish that "the public policy [is] well-defined, dominant and ascertained by reference to the laws and legal precedents and not from general considerations of supposed public interests." *Philadelphia Housing Authority v. American Federation of State, County and Municipal Employees,* 956 A.2d 477 (Pa.Cmwlth.2008).

The School District again relies on 24 P.S. § 5–511 for its contention that duly-elected school board officials must have the ability to manage, control and supervise extra-duty activities within the School District. However, the arbitrator's award in no way curtails this ability and nowhere does the School Code explicitly state that the issue of extra-duty activities may not be bargained over. Moreover, the arbitration question in the present case was whether the School District could unilaterally eliminate or combine extra-duty positions after the expiration of the 2000–2004 CBA and before the parties negotiated the 2004–2007 CBA. The public policy of the Commonwealth, in fact, embraces and promotes maintaining the *status quo* during the period between the expiration of one CBA and the negotiation of another so that both parties may begin the new set of negotiations on equal footing. *See, e.g., Pennsylvania State Park Officers' Association.* Further, the Commonwealth has embraced the public policy of using binding arbitration as a way to settle labor disputes and arbitration awards are given great deference.

Because the arbitrator's award was rationally derived from the CBA and does not violate public policy, the order of the trial court refusing to vacate provisions of the arbitration award is affirmed.

### ORDER

AND NOW, this *9th* day of *July,* 2009, the October 31, 2008 order of the Court of Common Pleas of Chester County is affirmed, and the arbitrator's award is upheld.