**TREDYFFRIN/EASTTOWN SCHOOL DISTRICT, Appellant**

v.

**TREDYFFRIN/EASTTOWN EDUCATION ASSOCIATION.**

Commonwealth Court of Pennsylvania.

Argued May 14, 2012.

Decided Sept. 7, 2012.

---

ShaVon Y. Savage, Blue Bell, for appellant.

Annemarie Dwyer, West Chester, for appellee.

BEFORE: McGINLEY, Judge, and COHN JUBELIRER, Judge, and McCULLOUGH, Judge.

OPINION BY Judge McGINLEY.

Tredyffrin/Easttown School District (School District) appeals from the Order of the Court of Common Pleas of Chester County (common pleas court) which denied the School District's Petition to Vacate Grievance Arbitration Award. The Award required the School District to provide Lisa Holland (Holland), a full-time teacher, with a salary step increase for the 2008–2009 school year.

Holland was employed as a full-time teacher in the School District when she became pregnant. Pursuant to the parties' collective bargaining agreement (CBA)[1], Holland notified the School District of her anticipated leave for child bearing/rearing purposes and submitted a School District "Application for Child Bearing/Child Rearing Leave" on August 10, 2007. Holland indicated the expected start date of the leave was "October 26" with a notation "unsure." The printed Application stated that an unpaid leave for child rearing purposes shall be granted in accordance with Section 3.12 of the CBA for "a minimum period of the duration of the school year, commencing with childbirth or the receipt of a child who has not reached six years of age. This leave will run concurrently with leave under the District's Family Medical Leave [FMLA] Policy and Regulation 4151.2–4241.2, and other leaves, as applicable." Susan Tiede, the Director of Personnel for the School District, handwrote on the bottom of the Application that the start date of the leave was October 29, 2007, and the expected date of return September 2008.

On the same date, August 10, 2007, Holland submitted a federal "Family Medical Leave Request" (FMLA Application).[2] The printed FMLA Application states "This leave will be used in conjunction with School District sponsored Child Rearing Leave. You are required to use your accrued paid sick leave while you are under medical supervision. Thereafter, you may elect to use your accrued paid vacation and/or personal leave during this absence."

1. There were two CBAs in effect during the relevant time period. One agreement covered the time period between July 1, 2004, to June 30, 2008, the other agreement covered the time period from July 1, 2008, to June 30, 2012.

2. The Family and Medical Leave Act of 1993 (FMLA) entitles an employee to take up to 12 work weeks of unpaid leave per year for (A) the care of a newborn son or daughter; (B) the adoption or foster-care placement of a child; (C) the care of a spouse, son, daughter, or parent with a serious medical condition; and (D) the employee's own serious health condition when the condition interferes with the employee's ability to perform at work. 29 U.S.C. § 2612(a)(1). The FMLA prohibits an employer from discriminating or retaliating against an employee for exercising rights under the FMLA. 29 U.S.C. § 2615(a) (1, 2). The FMLA further entitles eligible employees to reinstatement at the end of FMLA leave to the position of employment held before leave or to an "equivalent position." 29 U.S.C. §§ 2614(a)(1)(A), (B).

Holland began her leave on Monday, October 29, 2007. She delivered her baby on Tuesday, October 30, 2007. The District's Attendance Report showed that from October 29, 2007, through November 19, 2007 [3], Holland was placed on "sick leave" and "Child Rearing No Pay," concurrently. She received sick pay for the first 16 days of absence. From November 20, 2007, to the end of the 2007–2008 school year she was unpaid. It was undisputed that she was not physically in the classroom for the last five days of the first marking period.

The CBA provided that an employee was eligible for her annual salary increment when she returned from child bearing/rearing leave, so long as the employee was "in service" for at least one marking (i.e., grading period) period during the school year. Section 3.12 of the CBA, which pertained to child bearing/rearing leaves of absence provided, in pertinent part:

3.12 CHILD BEARING LEAVE AND CHILD REARING LEAVE OF ABSENCES

An Employee taking leave of absence pursuant to this section shall be entitled to his or her annual increment for any year, provided that Employee is *in service* in the School District for at least one marking period during the year in which such leave is taken. (Emphasis added).

The use of child rearing leave provided herein shall not be interpreted to prevent an Employee from using other leaves provided by this contract or the [Public] School Code [of 1949].

Collective Bargaining Agreement, July 1, 2004–June 30, 2008, Between Tredyffrin/Easttown School District and the Tredyffrin/Easttown Education Association at 21–22; Reproduced Record (R.R) at 53a–54a.

The term "in service" was not defined in the CBA.

### The Grievance

Holland returned to work in September 2008 for the 2008–2009 school year. The School District placed Holland at the same salary that she was on during the 2007–2008 school year. According to the School District Holland was not "in service for at least one marking period" because she began her child bearing leave *five days prior to the end of the first marking period.* The School District interpreted Section 3.12 of the CBA to mean that an employee must be physically on duty, i.e., teaching in the classroom, for at least one marking period to earn a salary step. The School District argued Holland was not entitled to a salary step because sick leave, even paid sick leave, was not "in service" time. In other words, it claimed that a physical presence in the classroom, during the entire marking period, was required before a teacher was entitled to the step up.

The Tredyffrin/Easttown Education Association (Association) filed a grievance on October 7, 2008, and alleged that Holland should have received her annual step increase for the 2008–2009 school year. The Association interpreted the term "in service" to include time spent on "paid status" which included, *inter alia,* "paid sick leave."

### Grievance Arbitrator's Award

On June 25, 2009, an arbitration hearing was held. The issue before the Arbitrator

---

**3.** The marking period relevant to this case was the first marking period which ended November 2, 2007. As the common pleas court pointed out, anything after November 2, 2007, is irrelevant as the Court is only concerned with the completion of the first marking period.

was whether the School District violated the CBA by failing to grant Holland an annual step increase for the 2008–2009 school year.

### 1. *The Public School Code*

The Arbitrator looked to Section 1154(a) of the Public School Code of 1949 [4], 24 P.S. § 11–1154(a), which governs the payment of salaries in cases of sickness, injury or death. The Arbitrator noted that employees on sick leave (not in the classroom) were entitled to pay for at least ten days, as if they were providing services in the classroom:

(a) In any school year *whenever a professional ... employe is prevented by illness or accidental injury from following his or her occupation, the school district shall pay to said employe for each day of absence the full salary to which the employe may be entitled as if said employe were actually engaged in the performance of duty for a period of ten days.* Any such unused leave shall be cumulative from year to year in the school district of current employment or its predecessors without limitation. All or any part of such accumulated unused leave may be taken with full pay in any one or more school years. (Emphasis added).

The Arbitrator also considered other sections of the Public School Code, including Section 1170, 24 P.S. § 11–1170, which requires that an employee on sabbatical must be considered to be "in regular full-time daily attendance" for purposes of receiving "increments."

The Arbitrator also noted that the terms of any collective bargaining agreement,

such as the CBA at issue, may not be inconsistent with or in conflict with any statute, including the Public School Code.

### 2. *FMLA was Incorporated into the CBA*

The Arbitrator noted that Section 3.12 of the CBA incorporated the provisions of the FMLA. This Section stated:

Family Medical Leave under the federal Medical Leave Act [FMLA]. The application of FMLA leave with be in accordance with District policy and regulation and the Family Medical Leave Act. Employees who wish to take a leave of absence for childbearing and child rearing or for the adoption of a child will be required to use FMLA leave for that purpose. This leave may be concurrent with other types of available leave.

The Arbitrator also noted that School Board Policy 4422 mandated that "nothing in the Agreement [CBA] be construed to lessen or diminish" FMLA benefits.[5]

The Arbitrator then looked to *the July 1, 2009, version* of the FMLA Regulations, 29 C.F.R. § 825.215(c)(1), (2) which states, in relevant part:

(c) Equivalent pay.

(1) An employee is entitled to any unconditional pay increases which may have occurred during the FMLA leave period, such as cost of living increases. *Pay increases conditioned upon seniority, length of service, or work performed must be granted in accordance with the employer's policy or practice with respect to other employees on an equivalent leave status*[6] *for a reason that does not qualify as FMLA leave.*

---

**4.** Act of March 10, 1949, P.L. 30, *as amended.*

**5.** Specifically, the Tredyffrin Easttown School Board Policy 4422, provided: "[n]othing in the Agreement shall be construed to lessen or

diminish the rights guaranteed to the employees under the FMLA."

**6.** An "equivalent leave status" refers to employees on "paid status" or "unpaid status."

An employee is entitled to be restored to a position with the same or equivalent pay premiums, such as a shift differential. If an employee departed from a position averaging ten hours of overtime (and corresponding overtime pay) each week, an employee is ordinarily entitled to such a position on return from FMLA leave.

(2) Equivalent pay includes any bonus or payment, whether it is discretionary or non-discretionary, made to employees consistent with the provisions of paragraph (c)(1) of this section. However, if a bonus or other payment is based on the achievement of a specified goal such as hours worked, products sold or perfect attendance, and the employee has not met the goal due to FMLA leave, then the payment may be denied, *unless otherwise paid to employees on an equivalent leave status for a reason that does not qualify as FMLA leave. For example, if an employee who used paid vacation leave for a non-FMLA purpose would receive the payment, then the employee who used paid vacation leave for an FMLA-protected purpose also must receive the payment.*

29 C.F.R. § 825.215(c)(1), (2) (emphasis added).

Under this Section of the 2009 FMLA Regulations, an employer must not treat employees who are on FMLA leave less favorably than employees on leave for *non*-FMLA protected purposes. Employers are not required to grant an employee on FMLA leave a pay increase *unless* the employer grants the pay increases to other employees on *non*-FMLA-protected leave. Applying the rationale of the example provided in 29 C.F.R. § 825.215(c)(2) to this matter, if an employee who used paid vacation for a non-FMLA protected purpose (e.g., short term illness) would receive the

increase then the employee who used paid vacation for an FMLA-protected purpose (pregnancy) also must receive the increase.

### 3. *Arbitrator's Decision and Award*

The Arbitrator concluded that the last five days of the first marking period, during which Holland used her accrued paid sick leave, were "in service" days for the purpose of entitling her to a pay increase the following year. He found that Holland was on record as using sick leave for the first 16 days of her child rearing leave and was unpaid from November 20, 2007, to the end of the 2007–2008 school year. Grievance Arbitration Decision and Award, October 5, 2009, at 7. The Arbitrator found, taking into account the provisions of the FMLA, the Public School Code, the CBA and the School District's records, the term "in service" could not be interpreted "in a vacuum" and had to be examined in the contractual and statutory context. Grievance Arbitration Decision and Award, October 5, 2009, at 11.

With respect to the FMLA, the Arbitrator determined that the School District's interpretation of "in service" (which denied Holland the pay increase) would, in effect, treat employees who were on FMLA leave differently than employees on non-FMLA leave. The Arbitrator found that "[i]nasmuch as employees on sick or sabbatical leave [i.e. paid leaves] would be entitled to step increases, the interpretation of 'in service' put forth by the School District has the effect of diminishing the rights under the FMLA." Grievance Arbitration Decision and Award, October 5, 2009, at 11.

The Arbitrator sustained the grievance and ordered the School District to place Holland on the next step of the salary schedule and to make her whole "for all back pay and benefits lost."

#### 4. Common Pleas Court Affirmed Arbitrator's Award

On August 13, 2010, the School District filed a Petition to Vacate Arbitration Award which was denied by the common pleas court on July 14, 2010. The common pleas court found the Arbitrator's Decision to be well-founded and that it logically flowed from the CBA.

### The School District's Appeal

#### Standard of Review

When reviewing an arbitrator's interpretation of a collective bargaining agreement, the proper standard of review for an appellate court is the deferential essence test. *Coatesville Area Sch. Dist. v. Coatesville Area Teachers' Ass'n/Pennsylvania State Educ. Ass'n*, 978 A.2d 413, 415 n. 2 (Pa.Cmwlth.2009), *appeal denied*, 605 Pa. 677, 989 A.2d 10 (2010). An exceptionally deferential standard is applied because binding arbitration is a highly favored method of dispute resolution. *Id.* "The essence test is a two prong test under which an award should be upheld if (1) the issue as properly defined is within the terms of the collective bargaining agreement, and (2) the arbitrator's award can be rationally derived from the collective bargaining agreement." *Id.* (citing *State System of Higher Educ. (Cheyney Univ.) v. State College Univ. Prof'l Ass'n*, 560 Pa. 135, 743 A.2d 405 (1999)). An arbitrator's findings of fact are not reviewable by an appellate court, "and as long as he has arguably construed or applied the collective bargaining agreement, an appellate court may not second-guess his findings of fact or interpretation." *Coatesville*, 978 A.2d at 415 n. 2. A reviewing court may only vacate an award when it is indis-

putably without foundation or fails to logically flow from the agreement. *Id.*

In *Cheyney*, our Supreme Court noted that a reviewing court should not inquire into whether the Arbitrator's decision is reasonable or even manifestly unreasonable, but rather the question is whether the award may, in any way, be rationally derived from the agreement between the parties, "viewed in light of its language, its context, and any other indicia of the parties' intention." *Id.* at 146, 743 A.2d at 411, (quoting *Community College of Beaver County v. Community College of Beaver County, Society of the Faculty (PSEA/NEA)*, 473 Pa. 576, 594, 375 A.2d 1267, 1275 (1977)), (citing *Ludwig Honold Mfg. Co. v. Fletcher*, 405 F.2d 1123, 1128 (3d Cir.1969)).

Because the School District does not dispute that the issue falls within the terms of the CBA, this Court will address the second prong of the essence test only. That is, whether the Arbitrator's interpretation of "in service" was rationally derived from the terms of the CBA.

### The Arbitrator's Application of the 2009 FMLA Regulations

First, the School District contends that the Arbitrator's interpretation did not logically flow from the CBA because he erroneously relied on 2009 FMLA Regulations that were enacted after this action accrued, and that undermined his analysis.[7] According to the School District, the applicable FMLA regulations were issued as of July 1, 2006, because this grievance arose in October 2007. The July 1, 2006, version of 29 C.F.R. § 825.215 states, in relevant part, during FMLA leave:

---

7. It would seem to the Court that if the School District believes the 2009 version of the FMLA Regulations did not apply, it should

have lodged a timely objection and afforded the Arbitrator the opportunity to apply the correct version *before* he issued his Decision.

*[p]ay increases* conditioned upon seniority, length of service, or work performed *would not have to be granted unless it is the employer's policy or practice to do so with respect to other employees on leave without pay* (Emphasis added).

Again, the Arbitrator determined, in these circumstances, that under the *2009 Regulations,* if an employer provides an increase to employees who took *paid sick leave* (e.g., a short term illness) then it must provide the same increase to an employee who took *paid sick leave* for a FMLA-protected purpose (e.g., child bearing/rearing).

The School District contends that, under the *2006 Regulations,* it was required to grant Holland the annual increment only if it granted salary increments to other employees who were *on leave without pay* (in an "unpaid status"). Unlike the 2009 Regulations, the 2006 Regulations did not require equivalent treatment of employees based on "equivalent leave status," i.e., "paid status" or "unpaid status." Rather, under the 2006 Regulations, the employer was only required to grant the pay increase to an employee on FMLA leave if it granted the pay increase to other employees on *unpaid leave.* The original legislation did not address situations where an employee uses her *paid* vacation time, *paid* personal leave, or *paid* sick and medical leave for part of the FMLA leave. The School District argues that because the Arbitrator applied the wrong Regulations, he "used the wrong comparator" when he compared Holland's treatment to employees on an "equivalent leave status" (in a "paid status") when the 2006 Regulations required him to compare her treatment only to employees *on leave without pay.*

8. Any attempt by the School District to undermine the Arbitrator's finding of fact is rejected as it was based soundly on the School District's attendance records.

This Court finds the School District's argument unpersuasive. The Arbitrator found, based on the School District's attendance records, that Holland was on *paid sick leave* for the last five days of the first marking period. That is not disputed.[8] Accordingly, the Arbitrator turned to the Public School Code as he was required to do. Under the Public School Code, employees who are on paid sick leave must receive their "full salary" and they are considered to be "actually engaged in the performance of duty" for a period of ten days. *See* Section 1154(a) of the Public School Code of 1949, 24 P.S. § 11–1154.

This is really where the inquiry should have ended. The Arbitrator found, and the common pleas court agreed, that the five days in question were paid sick days. Therefore, this Court agrees with the common pleas court that the provisions of the FMLA were not relevant and were not determinative of the Arbitrator's decision.

### *"Concurrent" Paid Sick Leave and FMLA Leave*

■ Nevertheless, in an attempt to bring this matter within the purview of the FMLA and the 2006 Regulations, the School District insists that Holland *was on FMLA leave* because she received paid sick leave and FMLA leave "concurrently." The School District argues on page 10 of its brief: "[t]he Trial Court concluded that the Arbitrator found Ms. Holland to be on *non-FMLA paid leave*[9] during the five days immediately preceding the end of the first marking period, making the provisions of the FMLA irrelevant. *However, this reasoning cannot be squared with the Arbitrator's finding that FMLA and non-*

9. That is, "paid sick leave."

*FMLA leave began to run concurrently ...*" (Emphasis added).

Essentially, the School District is challenging the Arbitrator's factual determination that Holland was not on FMLA leave during the five days immediately preceding the end of the first marking period. The School District seems to suggest that if FMLA leave and paid sick leave run "concurrently" the employee must be considered to be strictly on unpaid FMLA leave and not "in service."

■ First, this is not how the FMLA works. The FMLA provides job protection and equality to employees who are in an equivalent leave status. It is not used to force an employee into a particular status or to deny her the rights and privileges of her accrued benefits.

Contrary to the School District's position, the fact that an employee utilizes her accrued paid sick leave and FMLA leave "concurrently" does not negate the fact that the employee is still in a "paid status" for the time she receives her full salary and all benefits. Under the FMLA, employees may take, or employers may require employees to take, any accrued vacation, personal, family, medical or sick leave concurrently with FMLA leave.

■ An employer may require an employee to use her accrued paid leave (whether sick, personal, or vacation days or other paid time off) during FMLA leave. In that situation, the employee's time on paid sick leave would count toward the employee's FMLA 12–week allotment, thereby minimizing an employee's time away from the job. The employee would not be entitled to take her accrued sick leave *and* an additional 12 weeks.

An employee may also elect to take her paid sick leave "concurrent" with the FMLA leave, as Holland did here, which allowed her to receive her full salary for the first few weeks of her FMLA leave.

■ The option under the FMLA to take different types of leave "concurrently" with FMLA leave relates to the *duration* of the leave. It does not, as the School District suggests, automatically transform a paid leave status such as sick leave into unpaid FMLA leave. Nothing in the FMLA requires or authorizes an employer to consider an employee on FMLA leave to be in a "no-pay status" for the time she utilizes her accrued paid sick leave.

The Arbitrator correctly addressed Holland's leave status and determined she was on paid sick leave the last five days of the first marking period. He concluded that Holland's absence from the classroom while she was on paid sick leave, i.e., while she was on "paid status," was equal to being "in service" within the meaning of the parties' CBA. As previously addressed, it is well-established under the Public School Code that employees on sick leave are considered to be "actually engaged in the performance of duty" the first ten days of leave. The Arbitrator interpreted the term "in service" in context with the other terms of the CBA and the Public School Code, which, as this Court has noted was the correct application of the law.

This Court agrees with the common pleas court's conclusion that the Arbitrator's decision was rationally derived from the CBA. The Arbitrator's award satisfies the second prong of the essence test, and therefore, must be upheld.

The order of the common pleas court is affirmed.

### *ORDER*

AND NOW, this 7th day of September, 2012, the Order of the Common Pleas

Court of Chester County in the above-captioned matter is hereby affirmed.