**NORTH PENN SCHOOL DISTRICT,**
**Appellant**

v.

**NORTH PENN EDUCATION**
**ASSOCIATION,**
**PSEA/NEA.**

Commonwealth Court of Pennsylvania.

Argued May 14, 2012.
Decided Sept. 7, 2012.
Publication Ordered Jan. 18, 2013.

Richard B. Galtman, New Britain, for appellant.

Charles L. Herring, Montgomeryville, for appellee.

BEFORE: McGINLEY, Judge, and COHN JUBELIRER, Judge, and McCULLOUGH, Judge.

OPINION BY Judge McGINLEY.

North Perm School District (School District) appeals from an order of the Court of Common Pleas of Montgomery County (common pleas court) that denied the School District's petition to vacate the order and award of Arbitrator Margaret Brogan (Arbitrator Brogan).

The School District and the North Perm Education Association (Association), the exclusive bargaining representative of certain professional employees of the School District, are parties to a collective bargaining agreement (CBA), effective from September 1, 2009, through August 31, 2014.[1] During the 2009–2010 school year, pending negotiations for the 2009–2014 CBA, the School District and the Association agreed to extend the terms of the prior CBA that expired on June 30, 2009.

The School District employs fifteen Permanent Per Diem Substitutes (PPD substi-

---

1. Article I (Recognition) of the collective bargaining agreement (CBA) provides:

    The North Penn Education Association, hereinafter, called the bargaining agent, is hereby recognized by the North Penn School District, hereinafter called the employer, as the bargaining agent for the North Penn Education Association, hereinafter called the bargaining unit, and for the employees properly included in the bargaining unit under the conditions of Penn-

    sylvania Law [Public Employe Relations Act, Act of July 23, 1970, P.L. 563, as amended, 43 P.S. §§ 1101.101–1101.2301] (Act 195) providing for collective bargaining.

    Article I of the Collective Bargaining Agreement (CBA) between the North Penn Board of School Directors and the North Penn Education Association, School Years 2009–2010, 2010–2011, 2011–2012, 2012–2013, and 2013–2014.

tutes), who are hired for the school year on a year to year basis. The PPD substitutes fill in on a daily basis for regular professional employees and temporary professional employees, in this case teachers, who are absent during the school year.

On September 10, 2009, the Association filed a grievance and alleged that "the [School] violated the Agreement's Article I, Recognition and Appendix "C" entitled 'Working Conditions' § C–12, pertaining to payment of permanent per diem substitute teacher." [2] The School District responded that there was no basis in the CBA, past practice or statute that provided PPD substitutes with paid sick leave.

Before Arbitrator Brogan, the parties stipulated to the following:

1) *PPDs were created in 2001 as a result of the need in the District for substitute teachers.* (emphasis added).

2) The language of Section C–12 of the collective bargaining agreement (JX1) has been unchanged since it was agreed upon in 2001, *except with respect to the last phrase dealing with health care coverage.* (emphasis added).

3) Fifteen PPDs are hired per year. *They report and are assigned every day of the contract year.* (emphasis added).

4) *They all hold professional teaching certificates under the Pennsylvania Department of Education (PDE).* (emphasis added).

5) *They may or may not be tenured under the School Code, but they would have received that tenure from another District, prior to becoming a PPD.* A PPD does not receive tenure through his or her service as a PPD for the District and they are not treated as tenured by the District as a PPD. (emphasis added).

6) *The PPD attends all in-service, and is required to complete . . . Continuing*

*Educational requirements.* (emphasis added).

7) They do not do lesson plans unless required by length of the assignment.

8) They receive salary and benefits pursuant to Section C–12.

9) *The decision as to whether they will return is a year to year decision (they are treated as tenured), and when invited back they are given a "reasonable assurance" letter at the end of the school year, at the same time that regular teachers receive their assignments for the upcoming year.* (emphasis added).

10) The Association has been aware that since 2003 the PPDs have not gotten sick leave. *When they call in sick, they are not paid.* (emphasis added).

11) Several PPDs continue to return year after year.

12) *The Addendum Employee Handbook for Teachers (JX 4) is shared with employees each year. In that Handbook, employees are informed that PPDs do not receive paid sick days.* (emphasis added).

Arbitrator Brogan's Award, September 9, 2010, Stipulated Findings of Fact Nos. 1–12 at 2; Reproduced Record (R.R.) at 81a.

Arbitrator Brogan determined:

The parties here agree that pursuant to the PA Supreme Court's decision in *Mifflinburg* [*Area Education Association v. Mifflinburg Area School District,* 555 Pa. 326, 724 A.2d 339 (1999) ] the PA School Code is incorporated into every collective bargaining agreement between a school district and its employees. Accordingly, the Association may pursue those rights in this forum and the matter is substantially arbitrable.

Those School Code rights cannot be bargained away or otherwise waived by an

---

2. Opinion of the Court of Common Pleas, November 21, 2011, at 2.

employee's collective bargaining agent. *Therefore, it is irrelevant that the contract is silent on the issue of sick leave.* It is also immaterial that there has been a past practice that the [School] District has failed to grant sick leave rights to PPDs in the past, again since School Code rights may not be waived by the parties' conduct. *The sole issue before me is whether Section 11–1154* [Section 1154(a) of the Public School Code of 1949 (School Code)[3], 24 P.S. § 11–1154(a) ] *affords PPD's the right to receive sick leave. I conclude that it does.* (emphasis added).

. . . .

Section 11–1154(a) [sic] grants ten paid sick days per year to professional employees and TPE's [temporary professional employees]. *That section does not explicitly exclude employees who provide substitute professional service.* PPDs in fact perform the work of a professional employee on a substitute basis working every day of the contractual year. *Accordingly, it follows that PPDs are entitled to Section 11–1154(a) sick leave when they are employed in that capacity.* (emphasis added).

Arbitrator Brogan's Award at 5–6. Arbitrator Brogan sustained the Association's grievance.

On October 4, 2010, the School District petitioned to vacate Arbitrator Brogan's award and alleged:

7. On September 10, 2009, the Association filed a grievance alleging that the District violated the collective bargaining agreement, specifically Article I, Recognition and Appendix C–12, Permanent Per Diem Substitutes. . . . In particular, the Association's grievance alleges that the District did not provide paid sick days to Permanent Per Diem ("PPD") substitute teachers as allegedly required under Section 1154 of the School Code.

8. The Association's grievance was denied by the District at each step of the grievance procedure and was subsequently appealed to arbitration by the Association. . . . It was and is the position of the Petitioner [School District] that there is no basis in the contract, past practice or statute, upon which it can be determined that PPD have the right to receive sick leave.

. . . .

11. The determination of the arbitrator that PPDs are entitled to sick leave and further, ordering the District to restore each PPD ten (10) paid sick days per year going back to the filing of the grievance and prospectively is erroneous as a matter of law, for the following reasons:

a. The arbitrator's award did not draw its essence from the collective bargaining agreement and cannot be rationally derived from the collective bargaining agreement. . . .

. . . .

c. The arbitrator's award is in error and contrary to law in that it is erroneously predicated upon an improper and unsupportable interpretation of Section 1154(a) of the School Code. . . .

. . . .

e. The arbitrator's award is in error and contrary to law in that it erroneously creates a legal status on the part of PPD[s]. . . .

f. The arbitrator's award is in error and contrary to law in that its application is anomalous and inconsistent with the multitude of School Code provisions enacted by the legislature. . . .

3. Act of March 10, 1949, P.L. 30, *as amended.*

Petition to Vacate Arbitration Award, October 4, 2010, Paragraphs 7–8 and 11 at 2–5; R.R. at 7a–10a.

On August 25, 2011, the common pleas court denied the School District's petition to vacate the arbitration award and concluded:

> ... [T]his Court has determined that the Arbitrator's decision and award is well grounded within the guidelines of the highly deferential essence test. As previously stated, the school code rights are implicitly encompassed within the provisions of the governing CBA. Upon a detailed review of the record, Arbitrator Brogan's analysis of the school code, the applicable case law, along with her review of the contract taken as a whole show that she soundly drew her conclusions based on the essence of the Agreement. As such, it is evident that the decision and award can rationally be derived from the essence of the collective bargaining agreement; therefore, the award must be sustained. (*See, Dan-*

*ville Area School District vs.* [*sic* ] *Danville Area Education Association, PSEA/NEA* [,] 562 Pa. 238, 754 A.2d 1255 (Pa.2000))[sic].

Opinion of the Common Pleas Court at 8–9. The common pleas court denied the School District's petition to vacate.

## I. Was Arbitrator Brogan's Award Based Upon An Erroneous Interpretation Of Section 1154(a) Of The School Code, 24 P.S. § 11–1154(a)?

On appeal[4], the School District essentially contends that Section 1154(a) of the School Code, 24 P.S. § 11–1154(a), provides that only a "professional employee" or a "temporary professional employee" is entitled to paid sick leave. In fact, the School District asserts that Section 1154(a) of the School Code does not provide or can reasonably be construed to provide for paid sick leave to a substitute employee regardless of the length of the employment.[5] The School District stress-

---

4. "When reviewing an arbitrator's interpretation of a collective bargaining agreement, the proper standard of review for an appellate court is the deferential essence test." *Coatesville Area School District v. Coatesville Area Teachers' Association/Pennsylvania State Education Association,* 978 A.2d 413, 415 n. 2 (Pa.Cmwlth.2009). "An exceptionally deferential standard is applied because binding arbitration is a highly favored method of dispute resolution." *Id.* at 415 n. 2. "The essence test is a two prong test under which an award should be upheld if (1) the issue as properly defined is within the terms of the collective bargaining agreement and (2) the arbitrator's award can rationally be derived from the collective bargaining agreement." (citation omitted). *Id.* at 415 n. 2. "An arbitrator's findings of fact are not reviewable on appeal, and as long as he arguably construed or applied the collective bargaining agreement, an appellate court may not second-guess [her] findings of fact or interpretation." (citation omitted). *Id.* at 415 n. 2. "A reviewing court may only vacate an award when it is indisputably without foundation or fails to

logically flow from the agreement." *Id.* at 415 n. 2. "Our Supreme Court recently reaffirmed the highly deferential essence test in *Westmoreland Intermediate Unit # 7 v. Westmoreland Intermediate Unit # 7 Classroom Assistants Educational Support Personnel Association, PSEA/NEA,* 595 Pa. 648, 939 A.2d 855 (2007)." *Id.* at 415–16 n. 2.

5. The School District also presented the following issues on appeal:

1. Whether the arbitrator's award failed to draw its essence from the collective bargaining agreement and cannot be rationally derived from the collective bargaining agreement all in violation of the decision of the Supreme Court in *Midland Borough School District v. Midland Education Association,* 532 Pa. 530, 616 A.2d 633 (1992)?
2. Whether the arbitrator's award failed to draw its essence from the collective bargaining agreement in that the decision is not supported by any evidence including, but not limited to, the terms of the collective bargaining agreement at issue or any relevant or applicable past practice, as

es that the entire School Code must be incorporated into the CBA which includes the definition of "professional employee", "substitute", and "temporary professional employee" pursuant to Section 1101 of the School Code, 24 P.S. § 11–1101. *See Mifflinburg* (Actions taken pursuant to a collective bargaining agreement may not violate the School Code).

The Association counters that Arbitrator Brogan properly concluded that PPD substitutes, like any other School District employee required to come to work each day, are entitled to paid sick leave. The Association contends that Arbitrator Brogan's award explained that the language in Section 1154(a) of the School Code does not explicitly exclude a substitute, who provides professional services, from receiving ten days of paid sick leave per year. The Association cites *Scranton School District v. Weiss*, 113 Pa.Cmwlth. 381, 537 A.2d 910 (1988), *affirmed*, 521 Pa. 528, 557 A.2d 1060 (1989) in support of its position.

Section 1101 of the School Code, 24 P.S. § 11–1101, defines the following terms:

(1) *The term "professional employe" shall include those who are certificated as teachers,* supervisors, supervising principals, principals, assistant principals, vice principals, directors of vocational education, dental hygienists, visiting teachers, home and school visitors, school counselors, child nutrition program specialists, school librarians, school secretaries the selection of whom is on the basis of merit as determined by eligibility lists and school nurses. (emphasis added).

(2) *The term "substitute" shall mean any individual who has been employed to perform the duties of a regular professional employe during such period of time as the regular professional employe is absent* on sabbatical leave or for other legal cause authorized and approved by the board of school directors or to perform the duties of a temporary professional employe who is absent. (emphasis added).

(3) *The term "temporary professional employe" shall mean any individual who has been employed to perform, for a limited time, the duties of a newly created position or of a regular professional employe whose services have been terminated by death, resignation, suspension or removal.* (emphasis added).

Last, Section 1154 of the School Code, 24 P.S. § 11–1154, provides:

a. *In any school year whenever a professional or temporary professional employee is prevented by illness or accidental injury from following his or her occupation, the school district shall pay to said employe for each day of absence the full salary to which the employe may be entitled as if said employe were actually engaged in the performance of duty for a period of ten days.* (emphasis added).

---

nothing in the applicable collective bargaining agreement or past practice provides or can reasonably be construed as providing that substitute employees are entitled to sick leave as was determined by the arbitrator?

....

4. Whether the arbitrator's award is contrary to law in that it is erroneously predicated upon the misreading and misapplication of *Scranton School District v. Weiss*,

113 Pa.Cmwlth. 381, 537 A.2d 910 (1988), which is not only factually distinguishable from the matter at issue, but is further legally inapposite to the matter at issue? Brief for Appellant, Statement of the Questions Involved 1 and 2 at 4. This Court will not address these three issues because the resolution of the School District's remaining arguments determine whether Arbitrator Brogan's award may be interpreted as rationally derived from the CBA.

In *Scranton School District,* Carol Weiss (Weiss) was first employed by the Scranton School District in the *1974–75* school year where she taught at the East Scranton Junior High School as "*a temporary professional employee.*" (emphasis added). *Id.* at 911. Weiss was employed with the Scranton School District for the 1975–76 school year as "*a day to day substitute.*" (emphasis added). *Id.* at 911. "She remained as an employee of the [Scranton] School District for the *1976–1977 and 1977–1978* school years, *working as a permanent substitute teacher,* although she started the *1977–1978* school year as a '*long term substitute*' and was later retroactively reclassified as a '*permanent substitute*'." (citation omitted and emphasis added). *Id.* at 911 Weiss continued teaching at the East Scranton Junior High as a regular teacher for the *1978–79* school year. The following school year Weiss was assigned to the East Scranton Intermediate School where she remained as a regular teacher for the next five years. On April 9, 1985, Weiss requested a sabbatical leave based upon her years of service. On April 22, 1985, Weiss' request was denied because it was determined that she worked only eight out of the ten years required for a sabbatical leave. The decision was based on the fact that the Scranton School District *did not include the two years Weiss worked as a permanent substitute teacher because she was not considered a " 'professional employee or member of the supervisory, instructional or administrative staff.' "* (emphasis added). *Id.* at 911. Weiss sought a declaratory judgment that she was entitled to a sabbatical leave pursuant to Section 1166 of the School Code, 24 P.S. § 11–1166. After the Scranton School District filed an answer to the declaratory action, Weiss moved for summary judgment. The Court of Common Pleas of Lackawanna County entered summary judgment in favor of

Weiss and concluded that she was entitled to sabbatical leave.

On appeal, the Scranton School District argued before this Court that "*a year of service as a 'substitute' can never constitute one of the ten years of service as a 'professional employee' that must be served before one is entitled to a sabbatical leave.*" (emphasis added). *Id.* at 912. This Court rejected the Scranton School District's argument:

This court does not share the [Scranton School] District's interpretation of the two definitions. *Rather we believe that, under the appropriate circumstances, such as those presently before us, a year of service as a "substitute" would be a year of service as a "professional employe."* (emphasis added).

*The [Scranton School] District places significance on the fact that the legislature provided a separate definition for the term "substitute", viewing this as an indication of the legislature's intent to exclude all substitutes from the class of professional employees.* That was not the reason, however, that a separate definition for "substitute" was provided. Rather, the purpose was to define to which employees Section 1148 of the [School] Code, 24 P.S. § 11–1148, which deals with salary rates of substitute teachers, refers. We note that Section 1166 does not require ten years of service as a *regular* professional employee. (emphasis added and in original).

*In the present case, the record indicates that, during the two school years that appellee [Weiss] was employed as a permanent substitute, she worked the full school year, filling in for regular teachers who had taken leaves of absence. Furthermore, it indicates that, as a permanent substitute, she was paid in the same manner that regular teachers were paid.* That is to say payment of her

salary was spread out over 26 bi-weekly pay periods. *Given these circumstances, as well as the fact that these two years of service were found to be satisfactory, we must conclude that the two years of service in question must be counted toward the requisite ten years of service as a professional employe before one is entitled to a sabbatical leave.* Cf. *Richland Education Association v. Richland Area School District,* 53 Pa.Commonwealth Ct. [Pa.Cmwlth.] 367, 418 A.2d 787 (1980) (A determination by an arbitrator that a position of preferred substitute created by a school district is equivalent to that of a full time professional employe under the Public School Code of 1949, and thus within a bargaining unit established for full-time teachers held not to represent an improper expansion of the term "teacher" as used in the collective bargaining agreement and is not improper under provisions of the Public Employe Relations Act).

*Scranton School District,* 537 A.2d at 912.

■ Here, this Court's rational in *Scranton School District,* is still instructive and persuasive concerning the issue of whether PPD substitutes should be considered a professional employee pursuant to Section 1101(1) of the School Code, 24 P.S. § 11–1101(1), and Section 1154 of the School Code, 24 P.S. § 11–1154.

Initially, a review of the CBA established that PPD substitutes are included in Appendix C (Working Conditions) which also applies to regular teachers:

### C–2 Teacher Work Day

P–4 *The length of the teacher work day shall be uniformly established for all teachers as 7.5 hours, including lunch.* Variations in actual starting time and ending times may apply depending on specific assignment. The current practice regarding scheduling of parent conferences to accommodate parent scheduling will be continued. (emphasis added).

### C–3 Teacher Calendar

P–5 *The teacher work year shall consist of one hundred ninety-two (192) days.* One day will be used for preparation for the opening of school and one day will be used for the closing of school. (emphasis added).

. . . .

### C–11 Preparation Time

P–2 Beginning with the 2010–2011 school year, all elementary classroom bargaining unit members shall be scheduled for a minimum of forty-five (45) minutes of preparation time during the student day for each seven and one-half (7.5) hour work day. All secondary classroom bargaining unit members will be scheduled for one period of preparation time during the student day for each seven and one-half (7.5) hour work day. . . .

### C–12 Permanent Per Diem Substitutes

P–3 The District shall hire and retain in each year of the Agreement fifteen (15) permanent per diem substitutes.

P–4 *The salary for a permanent per diem substitute shall be seventy-five percent (75%) of the Bachelor's step one salary.*[6] *Permanent per diem substitutes shall be provided health care coverage at the employee level only. The employee shall be responsible for paving the same health care employee contribution per month as do the full-time employees* (i.e., for the 2009–2010 contract year, 10% of premium capped at a monthly maximum of $66.87 for single coverage). (emphasis added).

---

**6.** The salary schedule for Level/Step 1 is $42,870.00.

CBA, Appendix C–2–C–3 and C–11–C–12 at 20 and 23; R.R. at 34a and 37a.

Based upon the CBA and the rationale in *Scranton School District,* under the present limited circumstances, Arbitrator Brogan, properly concluded that PPD substitutes are entitled to paid sick leave.

**First,** the parties stipulated that PPD substitutes, like any professional employees, are required to have a bachelor's degree from an accredited four-year institution, and state certification as a teacher from the Pennsylvania Department of Education, and are subject to the same working conditions as a regular teacher.

**Second,** the fifteen PPD substitutes, like any professional employee, are hired for the entire school year which consist of one hundred and ninety-two days (*See* Appendix C–3, P–5 of the CBA) and must work seven and a one-half hours a day which includes lunch. (See Appendix C–3, P–4 of the CBA).

**Third,** the fifteen PPD substitutes, although not entitled to tenure by North Perm School District, because they are PPD substitutes, may still have tenure from another school district.

**Fourth,** the fifteen PPD substitutes, like any professional employee, are required to attend all in-services held within the School District and complete their continuing education requirements.

**Fifth,** the fifteen PPD substitutes, like any professional employee, receive salary and health care benefits under the CBA. (**See** Appendix C–12, P–4).

**Last,** the fifteen PPD substitutes are notified by a "reasonable assurance" letter at the end of the school year notifying them whether they will be invited back for the next school year which coincides with regular teachers receiving their assignments for the upcoming year.

Based upon the following, this Court must conclude that Arbitrator Brogan's conclusion that PPD substitutes are entitled to paid sick leave pursuant to Section 1154 of the School Code, 24 P.S. § 11–1154, was rationally derived from the CBA and that her interpretation was not an improper expansion of the terms "professional employe" and "temporary professional employe" under Section 1101(1) and (3) of the School Code, 24 P.S. § 11–1101(1) and (3).[7] *Scranton School District.*

## II. Was Arbitrator Brogan's Award Erroneous Because It Recognized A Legal Status For PPD Substitutes And A Concomitant Legal Obligation On The Part Of The School District?

█ The School District next argues that Arbitrator Brogan's award must be vacated because it contravened public poli-

---

**7.** The School District relies heavily on the term "substitute" as the reason why a PPD is not entitled to paid sick leave. However, the term "substitute" may be viewed as a certified teacher who substitutes for a regular teacher who is unable to conduct his or her class because of an illness or for some other reason. Usually, a substitute assignment lasts for a short duration, in most cases, a day. For example a school district and a teacher may register with the Automated Substitute Placement and Absence Management, known as AESOP. Under this program, the school district notifies AESOP of an absence of a regular teacher by either calling a toll-free number or by logging into the web. AESOP website then notifies a teacher of the absence and where to report as a substitute based upon a teacher's school district preference. The teacher may accept the assignment by also calling a toll-free number or by logging onto the AESOP website. Payment is only for the day that a teacher substitutes. Unlike here, a teacher that substitutes for a short period does not receive an annual salary, health care benefits, and is not hired to work for an entire school year with the same school district as does a PPD substitute.

cy, an exception to the essence test. The School District stresses that the Legislature created three categories of school employees under the School Code and that only professional employees and temporary professional employees are entitled to paid sick leave. Therefore, Arbitrator Brogan's determination that a substitute is also entitled to paid sick leave was contrary to public policy.

The Association counters that the public policy exception to the essence test is an extremely narrow exception. The Association contends that the School District failed to satisfy its burden of proving that the narrow public policy exception to the essence test applied.

■ In *Westmoreland Intermediate Unit # 7,* our Pennsylvania Supreme Court held, among other things, that "upon appropriate challenge by a party, a court should not enforce a grievance arbitration award that contravenes public policy ... [s]uch public policy, however, must be well-defined, dominant, and ascertained by reference to the laws and legal precedents and not from general considerations of supposed public interests." [8] *Westmoreland Intermediate Unit # 7,* 595 Pa. at 666, 939 A.2d at 865–66, *citing Eastern Associated Coal Corp. v. United Mine Workers of America, District 17,* 531 U.S. 57, 121 S.Ct. 462, 148 L.Ed.2d 354 (2000). "Of course, the burden to establish such a violation rests with the party asserting the public policy exception." *Westmoreland Intermediate Unit # 7,* 595 Pa. at 662–63, 939 A.2d at 864.

Finally, in *City of Bradford v. Teamsters Local Union No. 110,* 25 A.3d 408, 413 (Pa.Cmwlth.2011), this Court stressed:

Public policy, in relation to public employment, is different from public policy as it relates to private employment relationships. Unlike private employers, who are primarily concerned with the success of their own companies and resources, public employers and employees alike ... ultimately owe their duty of fidelity to the citizens of their respective jurisdictions and, therefore, must act with concern for both the citizens' welfare and public fisc.

Here, the School District failed to sustain its burden to establish that the award of paid sick leave to PPD substitutes under Section 1154 of the School Code was a violation of public policy.

**First,** as noted earlier, our Court had previously determined that a teacher hired as a substitute for two years could apply those prior years to satisfy the ten year requirement for sabbatical leave for professional employees pursuant to Section 1166 of the School Code, 24 P.S. § 11–1166. *Scranton School District. Scranton School District* was affirmed by our Supreme Court and remains good law. (*Scranton School District v. Weiss,* 521 Pa. 528, 557 A.2d 1060 (1989)).

**Second,** all School District employees are entitled to paid sick leave who are required to work each day, and yet the School District denied paid sick leave to PPD substitutes even though they provide professional education services to students every day of the school year, were certified, and must satisfy all professional development and in-service requirements.

**Third,** the School District failed to state or refer this Court to any public policy which is "well-defined, dominant, and as-

8.  In *Westmoreland Intermediate Unit # 7,* our Pennsylvania Supreme Court held that *"[t]urning to the public policy exception, we now recognize a public policy exception to the* *essence test that is based upon the federal public policy exception."* (emphasis added). *Id.* at 667, 939 A.2d at 866.

certained by reference to the laws and legal precedents and not from general consideration of supposed public interest." *See Westmoreland Intermediate Unit # 7,* 595 Pa. at 666, 939 A.2d at 866.

**Fourth,** the School District failed to prove that the implementation of the paid sick leave award would either undermine an implicated policy or cause the School District to breach its lawful obligation or public duty. In fact, a PPD substitute with paid sick leave would be more inclined not to report to school and risk the likelihood of infecting co-teachers and pupils.

**Fifth,** Arbitrator Brogan's award of paid sick leave actually supports public policy by allowing the School District to offer this as an incentive so that PPD substitutes will return to the School District each year and preserve the continuity of educational services.

**Last,** Arbitrator Brogan's award under the public policy analysis drew the necessary balance between the public employer's duty to protect the health, safety and welfare of the public, and the fair treatment of public employees which results in the legislative goal of ensuring prompt resolution of labor disputes through binding arbitration.

Arbitrator Brogan's award granting paid sick leave to PPD substitutes neither violated Section 1101 of the School Code, 24 P.S. § 11–1101, nor the CBA and did not pose a significant risk of undermining public policy. Arbitrator Brogan's award was rationally derived from and drew its essence from the CBA.[9]

Accordingly, this Court affirms.

## ORDER

AND NOW, this 7th day of September, 2012, the order of the Court of Common Pleas of Montgomery County in the above-captioned matter is affirmed.

---

9. The School District also argues that if Arbitrator Brogan's award stands then PPD substitutes would be considered professional employees for other benefits under Article XI of the School Code such as tenure, evaluation process, due process rights as to dismissal and disciplinary action, and protection from suspensions. This Court disagrees with such speculation.

The matter before this Court is fact specific. As noted, PPD substitutes are teachers certified by the Department of Public Education, are hired by the School District for the entire school year of 192 days, must work seven and a half hours a day, including lunch, must schedule and attend parent conferences, receive a yearly salary, and are entitled to health care coverage pursuant to the CBA.