J-A24007-15

**NON-PRECEDENTIAL DECISION – SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| MTPCS, LLC D/B/A CELLULAR ONE, | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| Appellant | : | |
| | : | |
| v. | : | |
| | : | |
| CHARLES HOLLIS AND COLLEEN | : | |
| MAYBERRY | : | |
| | : | |
| v. | : | |
| | : | |
| JONATHAN FOXMAN, DANIEL E. | : | |
| HOPKINS, BROADPOINT HOLDCO, | : | |
| LLC, BROADPOINT, LLC, CENTRAL | : | |
| LOUISIANA HOLDCO, LLC, MTPCS | : | |
| HOLDINGS, LLC, OK-5 HOLDCO, LLC | : | |
| AND TX-5 HOLDCO, LLC | : | No. 518 EDA 2014 |

Appeal from the Order Entered January 7, 2014,
in the Court of Common Pleas of Montgomery County,
Civil Division at No(s):  2012-21508

| | | |
|---|---|---|
| MTPCS, LLC D/B/A CELLULAR ONE | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| v. | : | |
| | : | |
| CHARLES HOLLIS AND COLLEEN | : | |
| MAYBERRY | : | |
| | : | |
| v. | : | |
| | : | |
| JONATHAN FOXMAN, DANIEL E. | : | |
| HOPKINS, BROADPOINT HOLDCO, | : | |
| LLC, BROADPOINT, LLC, CENTRAL | : | |
| LOUISIANA HOLDCO, LLC, MTPCS | : | |
| HOLDINGS, LLC, OK-5 HOLDCO, LLC | : | |
| AND TX-5 HOLDCO, LLC, | : | |
| | : | |
| Appellants | : | No. 519 EDA 2014 |

Appeal from the Order Entered January 7, 2014,
in the Court of Common Pleas of Montgomery County,

J-A24007-15

Civil Division at No(s): 2012-21508

BEFORE: PANELLA,[*] WECHT, and STRASSBURGER,** JJ.

MEMORANDUM BY STRASSBURGER, J.:   **FILED SEPTEMBER 28, 2015**

MTPCS, LLC d/b/a Cellular One, Jonathan Foxman, Daniel E. Hopkins, Broadpoint Holdco, LLC, Broadpoint, LLC, Central Louisiana Holdco, LLC, MTPCS Holdings, LLC, OK-5 Holdco, LLC, and TX-10 Holdco, LLC appeal from orders that, *inter alia*, overruled their preliminary objections brought pursuant to Pa.R.C.P. 1028(a)(6).[1]  We affirm.

The undisputed and relevant background underlying this matter can be summarized as follows.  MTPCS, LLC d/b/a Cellular One (Cellular One) offered Charles Hollis (Hollis) employment as an Executive Vice President and Chief Operating Officer.  On September 30, 2010, Hollis accepted the offer by signing an "Employee and Noncompetition Agreement" (Employment Agreement).  In pertinent part, the Employment Agreement states that the

---

[*]  Judge Panella did not participate in the consideration or decision in this case.

** Retired Senior Judge assigned to the Superior Court.

[1] Rule 1028(a)(6) provides, "Preliminary objections may be filed by any party to any pleading and are limited to the following grounds … pendency of a prior action or agreement for alternative dispute resolution[.]"  The appealing parties properly utilized this rule to assert the existence of an arbitration agreement. ***Pennsy Supply, Inc. v. Mumma***, 921 A.2d 1184, 1189 (Pa. Super. 2007).  An order overruling such a preliminary objection qualifies as an immediately appealable interlocutory order. ***Henning v. State Farm Mut. Auto. Ins. Co.***, 795 A.2d 994, 995 (Pa. Super. 2002).

parties consent to jurisdiction in Pennsylvania if a dispute were to arise regarding the agreement.

The same day that he signed the Employment Agreement, Hollis signed six "Restricted Equity Grant Agreements." Each of these agreements listed Hollis as a party, and each one listed a separate entity as the other party. Hollis signed such agreements with MTPCS Holdings, LLC, Broadpoint Holdco, LLC, Broadpoint, LLC, Central Louisiana Holdco, LLC, OK-5 Holdco, LLC, and TX-10 Holdco, LLC.[2] The president and CEO of Cellular One and many of the LLCs is Jonathan Foxman (Foxman). These agreements granted Hollis equity interests in the LLCs and stated, in pertinent part, that the parties agreed to litigate disputes in Delaware.

Cellular One terminated Hollis' employment on March 16, 2012. In August of the same year, Cellular One filed a complaint in the Court of Common Pleas of Montgomery County, Pennsylvania. The complaint named as defendants Hollis and Colleen Mayberry (Mayberry), Cellular One's former Director of Marketing.[3] As to Hollis, the complaint contained counts of fraud, breach of fiduciary duties, civil conspiracy, unjust enrichment, forfeiture, and breach of the Employment Agreement.

Hollis responded to the complaint by filing an answer with new matter and counterclaims against Cellular One. In addition, he filed a joinder

---

[2] We will refer to these entities collectively as "the LLCs." The LLCs apparently are holding companies for Cellular One.

[3] Mayberry's role in this litigation is irrelevant to this appeal.

complaint against the LLCs, Foxman, and Daniel Hopkins (Hopkins), Cellular One's Executive Vice President and Chief Financial Officer.[4]

Concerning his counterclaims against Cellular One, Hollis presented several counts: breach of the Employment Agreement, breach of the Restricted Grant of Equity Agreements, violation of the Pennsylvania Wage Payment and Collection Law, fraudulent inducement, defamation, and civil conspiracy. Under the fraudulent inducement count, Hollis alleged that, in September of 2011, Foxman fraudulently induced Hollis into signing "certain documents for Cellular One in combination with the refinancing of certain debt." Answer with New Matter and Counterclaim, 10/9/2012, at Counterclaims ¶ 91. Hollis further alleged that "Cellular One and [the LLCs] are liable for the tortious acts of Foxman sounding in fraudulent inducement by virtue of the doctrine of respondeat superior." *Id.* at ¶ 97.

In his joinder complaint, Hollis presented the following counts against only the LLCs: breach of the Restricted Grant of Equity Agreements and breach of the Employment Agreement. He brought the following counts against all of the Joinder Defendants: civil conspiracy and violation of the Pennsylvania Wage Payment and Collection Law. He also presented a count of fraudulent inducement against the LLCs and Foxman and a count of

---

[4] We will refer to the LLCs, Foxman, and Hopkins collectively as "the Joinder Defendants." In addition, when appropriate, we will refer to Cellular One and the Joinder Defendants collectively as "Appellants."

defamation against the LLCs and Hopkins. Lastly, he claimed that Foxman and Hopkins breached their fiduciary duties.

As he did in his fraudulent-inducement counterclaim against Cellular One, in his joinder complaint Hollis alleged that, in September of 2011, Foxman fraudulently induced Hollis into signing "certain documents for Cellular One in combination with the refinancing of certain debt." Joinder Complaint, 10/9/2012, at ¶ 115. He again averred that "Cellular One and [the LLCs] are liable for the tortious acts of Foxman sounding in fraudulent inducement by virtue of the doctrine of respondeat superior." *Id.* at ¶ 121. Regarding the breach of fiduciary duties claim in the joinder complaint against Foxman and Hopkins, Hollis maintained that, in their roles as officers of Cellular One and the LLCs, Foxman and Hopkins acted in such a way as to benefit themselves instead of acting in good faith for the benefit of the LLCs.

On December 28, 2012, Cellular One filed a number of preliminary objections to Hollis' counterclaims, and the Joinder Defendants did the same. Most relevant to this appeal, Cellular One presented a preliminary objection pursuant to Pa.R.C.P. 1028(a)(6), wherein Cellular One contended that Hollis is required to arbitrate his fraudulent inducement claim against Cellular One. According to Cellular One, "[i]n connection with the September 2011 refinancing, Hollis entered into amended and restated limited liability agreements for certain of the [LLCs] (the "Amended Operating Agreements") and corresponding written consents." Cellular One's Preliminary Objections,

12/28/2012, at ¶ 22. Cellular One asserted that the Amended Operating Agreements contain an arbitration clause, that the fraudulent inducement claim is arbitrable pursuant to that clause, and that Hollis therefore must arbitrate that claim in Boston, Massachusetts.

Cellular One also sought to dismiss Hollis' claim that Cellular One breached the Restricted Equity Grant Agreements. Cellular One maintained that Hollis must pursue that claim in Delaware. In the alternative, Cellular One contended that the claim must be dismissed because Cellular One is not a party to those agreements; rather, those agreements are between Hollis and the LLCs.

The Joinder Defendants' preliminary objections were similar to Cellular One's objections. In relevant part, the Joinder Defendants invoked the arbitration clause in the Amended Operating Agreements and contended that Hollis must pursue his fraudulent inducement and breach of fiduciary claims *via* arbitration in Boston, Massachusetts. They also sought to dismiss Hollis' claim that they breached the Restricted Equity Grant Agreements, as those claims must be pursued in Delaware. In addition, the Joinder Defendants sought to dismiss Hollis' claim that they breached the Employment Agreement. According to the Joinder Defendants, they are not parties to that agreement; rather, Hollis and Cellular One are the parties to the Employment Agreement.

On January 17, 2014, the trial court entered orders which, in relevant part, overruled the preliminary objections. Cellular One and the Joinder Defendants timely filed separate notices of appeal. The parties and the trial court subsequently complied with Pa.R.A.P. 1925. This Court consolidated the appeals.

Cellular One and the Joint Defendants filed a single brief in this Court wherein they ask us to consider the following question: "Did the trial court err by refusing to compel [] Hollis to submit his fraudulent inducement and breach of fiduciary duty counterclaims to binding arbitration, where the applicable Amended Operating Agreements require arbitration of these claims?" Appellants' Brief at 5.

This issue challenges the trial court's decision to overrule the preliminary objections wherein Appellants sought to compel Hollis to arbitrate his fraudulent-inducement and breach-of-fiduciary-duties claims in Massachusetts. "We review a claim that the trial court improperly overruled a preliminary objection in the nature of a motion to compel arbitration for an abuse of discretion and to determine whether the trial court's findings are supported by substantial evidence." *Taylor v. Extendicare Health Facilities, Inc.*, 113 A.3d 317, 320 (Pa. Super. 2015).

Regarding Appellants' primary argument, Appellants correctly observe that, "[u]nder Pennsylvania law, where a party seeks to compel arbitration, courts must apply a straightforward test that asks (1) whether a valid

arbitration agreement exists, and (2) whether the dispute involved is within the scope of the arbitration agreement." Appellants' Brief at 11 (citing, *inter alia*, **Henning v. State Farm Mut. Auto. Ins. Co.**, 795 A.2d 994, 996 (Pa. Super. 2002)). According to Appellants, because they met this two-prong test, the trial court erred by overruling their preliminary objections. Appellants attempt to bolster their primary argument by contending that the Federal Arbitration Act (FAA), 9 U.S.C. §§ 1-307, required the trial court to sustain their preliminary objections and compel Hollis to arbitrate his fraudulent-inducement and breach-of-fiduciary-duties claims.

Appellants have failed to persuade us that the trial court erred and that they are entitled to relief. *See Commonwealth v. Turner*, 58 A.3d 848, 847 (Pa. Super. 2012) ("It is an appellant's burden to persuade us that the [trial] court erred and that relief is due.").

Appellants do a poor job of explaining the Amended Operating Agreements and who the parties are to those agreements. Identification of these parties is necessary because, generally speaking, only the parties to those agreements can invoke the arbitration clauses therein. *See Smay v. E.R. Stuebner, Inc.*, 864 A.2d 1266, 1271 (Pa. Super. 2004) ("In general, only parties to an arbitration agreement are subject to arbitration."); *see also Callan v. Oxford Land Development, Inc.*, 858 A.2d 1229, 1233 (Pa. Super. 2004) ("Where a party to a civil action seeks to compel arbitration, a two-part test is employed. First, the trial court must establish

if a valid agreement to arbitrate exists **between the parties**. Second, if the trial court determines such an agreement exists, it must then ascertain if the dispute involved is within the scope of the arbitration provision. **If a valid arbitration agreement exists between the parties**, and the plaintiff's claim is within the scope of the agreement, the controversy must be submitted to arbitration.") (citations omitted and emphasis added).[5]

We further observe that, for purposes of their preliminary objections, Appellants made clear that Cellular One and the LLCs are separate entities with different legal relationships with Hollis. Yet, on appeal, Appellants blur these relationships. In fact, Appellants simply refer to themselves collectively as Cellular One. *See*, *e.g.*, Appellants' Brief at 2 n.1 ("[The Joinder Defendants] are officers or corporate affiliates of [Cellular One]. Accordingly, [Cellular One] and the [Joinder Defendants] shall be referred to collectively as "Cellular One.").

Further complicating matters is Appellants' failure to include in the certified record full copies of the Amended Operating Agreements. Instead, Appellants attached to their preliminary objections portions of those agreements. According to Appellants, they did not include the full agreements "to protect confidential information that is not pertinent to the

---

[5] We are aware that "a nonparty, such as a third-party beneficiary, may fall within the scope of an arbitration agreement if that is the parties' intent." *Callan*, 858 A.2d at 1233. Appellants have not invoked any claim regarding nonparty status to the Amended Operating Agreements.

issues raised in these preliminary objections." Cellular One's Preliminary Objections, 12/28/2012, at 8 n.1; Joinder Defendants' Preliminary Objections, 12/28/2012, at 8 n.1.

Without the entirety of these agreements, we are unable to review them properly. *See*, *e.g.*, *Burton v. Republic Ins. Co.*, 845 A.2d 889, 893 (Pa. Super. 2004) ("In interpreting the terms of a[] contract, we examine the contract in its entirety, giving all of the provisions their proper effect."); *see also Gray v. Buonopane*, 53 A.3d 829, 833 (Pa. Super. 2012) ("[T]he record as certified to this Court, the completion of which is Gray's responsibility as the appellant, is noticeably fragmented.") (citing *Commonwealth v. Bongiorno*, 905 A.2d 998, 1001 (Pa. Super. 2006), for the proposition that the "ultimate responsibility of ensuring that the transmitted record is complete rests squarely upon the appellant and not upon the appellate courts."). With this oversight in mind, we observe the following.

The Amended Operating Agreements all contain similar language defining the parties thereto. We will provide an example of the introductory paragraph one of the agreements.

> The Second Amended and Restated Limited Liability Company Agreement of Central Louisiana Holdco, LLC (the "Company") is made as of September 21, 2011 (the "Effective Date") **by and among the Persons listed on <u>Schedule A</u> to this Agreement** as Class A Members (such persons, and any other Persons admitted to the Company as Class A Members after the date of this Agreement in accordance with the terms of this Agreement, being referred to collectively as the "Class A

> Members" and each individually as a "Class A Member"), the Persons listed on Schedule A to this Agreement as Class B Members (such persons, and any other Persons admitted to the Company as Class B Members after the date of this Agreement in accordance with the terms of this Agreement, being referred to collectively as the "Class B Members" and each individually as a "Class B Member"). The Class A Members and the Class B Members sometimes are referred to collectively in this Agreement as the "Members," and each individually as "Member."

Cellular One's Preliminary Objections, 12/28/2012, Exhibit 3, at 1 (emphasis added). The agreement does contain a dispute resolution clause which states the parties' understanding that all disputes arising out of or related to the agreement must be arbitrated in Boston, Massachusetts. *Id.* at 36-38.[6]

However, the quoted language dictates that the agreement was made "by and among the Persons listed on Schedule A" of the agreement. Yet, while Cellular One attached to the agreement what appear to be Member signature pages, there is no document that is identified as "Schedule A," thus, making it impossible for this Court to determine definitively who is bound by the agreement. Of further note, none of the signature pages is signed on behalf of Cellular One.

This case involves any number of complicated agreements entered into by sophisticated parties. Appellants nonetheless put forth little effort in attempting to explain the relationships between and among the parties and agreements. Indeed, it seems that Appellants consider Cellular One and the

---

[6] Based upon the numbering at the bottom of the agreement, the substantive portion of the agreement is at least 38 pages long. However, Appellants included in the certified record only seven of those pages.

LLCs to be one entity (Cellular One) when that benefits their position, and they consider Cellular One and the LLCs to be separate entities when that benefits a different position.

Appellants simply have failed to convince us that the trial court abused its discretion by overruling the preliminary objections in the nature of motions to compel arbitration. Consequently, we affirm the trial court's order.

Order affirmed.

*Judgment Entered.*

_____
Joseph D. Seletyn, Esq.
Prothonotary

Date: <u>9/28/2015</u>